United States Court of Appeals,

Fifth Circuit.

No. 92-5596

Summary Calendar.

Leslie Wayne YOHEY, Petitioner-Appellant,

v.

James A. COLLINS, Director Department of Criminal Justice Institutional Division, et al.,
Respondents-Appellees.

March 8, 1993.

Appeal from the United States District Court for the Western District of Texas.

Before HIGGINBOTHAM, SMITH, and DeMOSS, Circuit Judges:

DeMOSS, Circuit Judge:

Leslie Wayne Yohey is currently in the custody of the Texas Department of Criminal Justice. He was convicted by a jury of murder and sentenced to life imprisonment. The Texas Court of Appeals affirmed his conviction and sentence on direct appeal. *Yohey v. State,* 801 S.W.2d 232, 234, 247 (Tex.App.—San Antonio 1990, pet. ref'd). Yohey then filed a petition for discretionary review with the Texas Court of Criminal Appeals, which was refused.

Subsequently, Yohey filed a federal petition for habeas corpus raising four issues, but attaching copies of two state petitions for writ of mandamus and an appellate brief filed after the state trial court's pretrial denial of habeas relief. The state moved to dismiss for failure to exhaust state remedies on some of the issues, and the magistrate judge ordered Yohey to file a "brief written advisory" identifying all his grounds for relief. Yohey responded with a long document in which the district court identified 45 issues, corresponding to the 44 issues raised by Yohey on direct appeal. The magistrate judge determined that Yohey had exhausted all of his state remedies, and recommended denial of habeas relief on the merits. The magistrate judge recommended dismissal of numerous claims on the basis that Yohey had alleged errors only of state law, but identified and discussed some federal constitutional claims as well. Over Yohey's extensive objections, the district court adopted the magistrate judge's report and recommendation and denied habeas relief. The

district court granted certificate of probable cause (CPC). This Court has denied appointment of counsel.

A summary of the evidence at trial is helpful in understanding Yohey's numerous allegations. The summary is drawn from the state appeals court's decision.

Yohey was convicted for murdering his estranged wife and her boyfriend. Yohey and his wife, Terri Denise Yohey, were separated and living apart. In the early morning hours of July 14, 1985, Yohey entered her apartment with a key. She was not home. Yohey had with him his loaded nine-millimeter pistol. He lay down on the bed and waited for his wife. When Terri Yohey and Craig Gooch entered the apartment and came into the bedroom they were shot and killed. Gooch was shot fifteen times. Seven or eight nine-millimeter bullets were recovered from his body. Terri Yohey was shot seven times. Three nine-millimeter bullets and two .22 caliber bullets were recovered from her body.

At his dying wife's insistence, and after misdialing several times, Yohey dialed 911 for assistance. When the police arrived, Yohey told them he had shot the two individuals. While in custody he gave a written extra-judicial confession to police, which he testified at trial that he believed to be accurate. In his testimony Yohey stated he carried his nine-millimeter weapon into the apartment, as he was afraid it would be stolen if he left it in his truck outside. In the confusion that followed the entry of Gooch and Yohey's wife into the bedroom, Yohey testified that he shot both. He related that his wife had retrieved the .22 caliber pistol from a drawer and shot at him apparently after she had been shot. He also admitted taking the .22 caliber pistol from her and then shooting her with it after shooting at her with his nine-millimeter gun. He related that at one point he gathered the shells and the two guns and left in his truck; that he returned shortly thereafter, scattered the shells in the bedroom, and placed the .22 caliber pistol in Gooch's hand.

Yohey's host of alleged errors are better understood in light of his interpretation of the state trial court's determination to have him convicted. Yohey was originally represented by appointed counsel Robert Willmann, who moved for extensive expert witness fees. The trial court denied that motion, citing in part Tex.Code Crim.P. art. 26.05, which limited such fees to $500. Willmann filed

a mandamus petition with the Texas Court of Criminal Appeals on this matter, and another on other discovery issues. While those petitions were pending, the state moved to decertify Yohey's pauper status, the trial judge granted the motion, and Willmann was relieved of his appointment. At some later point, the trial judge ordered Yohey incarcerated allegedly to make him a pauper again, found him a pauper, and appointed a different attorney, Gary Hutton, who also represented Yohey on direct appeal. Prior to Yohey's trial, article 26.05 was amended and, eleven days before trial, the trial court did grant appointment of a psychiatric expert. *Yohey,* 801 S.W.2d at 238, 241-42.

Yohey has filed this appeal pro se. He requests, in part, the adoption of previously filed legal and factual arguments in his objections to the magistrate judge's report and in various state court pleadings. He specifically states that he will not repeat such claims. Yohey has abandoned these arguments by failing to argue them in the body of his brief. "Fed.R.App.P. 28(a)(4) requires that the appellant's argument contain the reasons he deserves the requested relief "with citation to the authorities, statutes and parts of the record relied on.' " *Weaver v. Puckett,* 896 F.2d 126, 128 (5th Cir.), *cert. denied,* --- U.S. ----, 111 S.Ct. 427, 112 L.Ed.2d 411 (1990) (citations omitted). "Although we liberally construe the briefs of pro se appellants, we also require that arguments must be briefed to be preserved." *Price v. Digital Equip. Corp.,* 846 F.2d 1026, 1028 (5th Cir.1988) (citations omitted). Also, Yohey's incorporation of arguments from other pleadings would lengthen a brief already at the 50-page limit. *See* Fed.R.App.P. 28(g). Therefore, only the issues presented and argued in the brief are addressed.

Additionally, Yohey's pro se brief is convoluted at best. The issues discussed below on the merits are ones determined to have been preserved and argued on appeal. After a diligent comparison of Yohey's brief with the district court record, several issues have been deemed as 1) new claims, that either were not presented to the district court or were presented in a totally different context in his petition, or 2) abandoned claims because they are raised for the first time in Yohey's reply brief.

NEW CLAIMS RAISED IN INITIAL APPELLATE BRIEF

The issues below are claims raised on appeal, but Yohey did not argue them in district court. As a general rule, this Court does not review issues raised for the first time on appeal. *United States*

*v. Garcia-Pillado,* 898 F.2d 36, 39 (5th Cir.1990). The issues are as follows:

1) Amended Tex.Code Crim.P. art. 26.05, regarding funding of expert witnesses, should have been applied retroactively. In district court, Yohey argued Article 26.05 should have been held unconstitutional.

2) The state trial court denied Yohey access to exculpatory evidence by denying his pretrial motion to gain access to the crime scene. The only issues in his petition regarding complaints of denial of access to exculpatory evidence do not identify this motion.

3) Ineffective assistance of counsel because of no access to exculpatory evidence. Although he complains of ineffective assistance of counsel due to conflict of interest, as addressed below, this particular reason is not raised. *See Barnard v. Collins,* 958 F.2d 634, 643 n. 12 (5th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 990, --- L.Ed.2d ---- (1992).

4) The state suppressed evidence in the form of the EMS reports and tapes of Yohey's calls to 911 and further suppressed evidence in control of Mrs. Yohey's family members. Although the report and recommendation mentions a general *Brady* claim, the claim was raised in the context of denial of discovery motions. The magistrate judge noted that most of Yohey's discovery requests had been granted and that Yohey did not specifically identify any evidence withheld by the prosecution as a result of the denial of discovery. In his district court petition, Yohey never identified the alleged suppression of these specific pieces of evidence as separate issues about which he was complaining. He did mention the EMS reports and 911 tapes in the context of an issue complaining of the admission of an officer's opinion as to the time of death of the victims. However, the report and recommendation did not perceive that issue to be a veiled *Brady* claim. Additionally, Yohey never requested either the EMS reports and 911 tapes or evidence in the possession of Terri Yohey's family in his state pretrial discovery requests.

### CLAIMS RAISED IN APPELLATE REPLY BRIEF

Yohey also raises claims in his reply brief that are either completely new, essentially state no claim for relief, or were not raised in his initial appellate brief. This Court will not consider a claim raised for the first time in a reply brief. *United States v. Prince,* 868 F.2d 1379, 1386 (5th Cir.), *cert.*

*denied,* 493 U.S. 932, 110 S.Ct. 321, 107 L.Ed.2d 312 (1989).  The claims are as follows:

1) The recitation of facts the state used in its appellate brief was misleading.  The state's current characterization of the evidence presents no claim for relief.

2) His confession was illegally coerced.  This issue was raised in his petition, but was not presented or argued in his initial appeal brief.

3) The White family by itself suppressed evidence by withholding it from the defense.  This issue is new.

4) The state appellate court erroneously upheld his conviction.  This claim states no ground for federal habeas relief.

On appeal Yohey specifically complains about certain alleged evidentiary errors of state law.  His complaints are as follows:

1) The state trial court erred in permitting the state to call certain rebuttal witnesses whose identities the prosecution had not made known to defense counsel prior to the trial.

2) The state trial court erred in its handling of Yohey's written statement, provided to and used by his psychiatric expert, regarding the events of the shootings.

During Yohey's state appeal he presented these same evidentiary points of error.  Citing cases from the Texas Court of Criminal Appeals, the Texas Court of Appeals decided these issues were state law claims and were not favorable to him.  *Yohey,* 801 S.W.2d at 235-38.  In reviewing Yohey's petition for federal habeas relief, the district court also found these claims to be entirely state law claims, and as such, did not provide a basis for federal habeas relief.

In his objections to the report and recommendation and on appeal, Yohey claims that the above errors rendered his trial fundamentally unfair.  By so claiming, Yohey tries to qualify for federal habeas relief by attempting to present the issues in a federal constitutional framework.

A state prisoner must exhaust his state remedies before applying for federal habeas relief.  The exhaustion requirement is satisfied when federal claims have been fairly presented to the state courts for disposition.  *Minor v. Lucas,* 697 F.2d 697, 698 (5th Cir.1983).  Further, federal constitutional claims must have been presented to and considered by the state courts in a federal

constitutional framework before resort can be made to federal courts. *Id.* "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Id.* (quoting *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (per curiam).

The district court properly considered these issues as solely state law issues that were not entitled to federal habeas relief. Had the district court considered these claims in their new federal guise, it would have been compelled to dismiss the entire petition for failure to exhaust state remedies.

Yohey cannot now try to word his claims as federal constitutional issues and have them considered in this forum. Yohey's amended federal claims are not properly before this Court, because state remedies have not been exhausted.

Yohey argues that the trial court erred in denying his requests for adequate funding for him to retain ballistics, forensic, and psychiatric experts to aid in his defense. Without the help of such experts, Yohey indicates that he was unable to prepare an adequate defense to the murder charges.

*The Psychiatric Expert*

*Ake v. Oklahoma,* 470 U.S. 68, 82-83, 105 S.Ct. 1087, 1096, 84 L.Ed.2d 53 (1985) holds that an indigent defendant who demonstrates that his sanity at the time of the offense is to be a significant factor at trial is entitled to a state appointed psychiatrist. This Court has determined that the *Ake* threshold requires that the defendant, at a minimum, make allegations supported by a factual showing that his insanity is in fact at issue. *Volanty v. Lynaugh,* 874 F.2d 243, 245 (5th Cir.), *cert. denied,* 493 U.S. 955, 110 S.Ct. 369, 107 L.Ed.2d 355 (1989).

Although a psychiatric expert was eventually appointed, Yohey claims that the district court erred in waiting to appoint the psychiatrist until eleven days before trial. Yohey argues that this delay denied him the necessary time to develop unspecified critical testimony. However, Yohey has failed to specify the critical testimony or allege specific facts as to how the delay prejudiced him.

*Ake* specifically left to the states the decision on how to implement the right of indigents to psychiatric experts and indicated that an indigent defendant did not have a constitutional right to

choose a psychiatrist of his personal liking or to receive funds to hire his own. *Ake* 470 U.S. at 83, 105 S.Ct. at 1096. Therefore, the fact that the state trial court waited until eleven days before trial to appoint a psychiatric expert does not warrant federal habeas relief, especially in light of Yohey's vagueness as to how he was prejudiced.

Yohey does claim for the first time on appeal that the delay resulted in an inaccurate evaluation of his psychological profile at the time of the shootings. However, this issue, raised for the first time on appeal, need not be reviewed. *Garcia-Pillado,* 898 F.2d at 39.

*Non-psychiatric Experts*

Yohey also requested the appointment and funding of forensic and ballistic experts to assist in preparing his defense that he fired in self-defense and the shot which mortally wounded his wife's boyfriend was actually fired by his wife. He claims that such experts would have assisted his self defense theory and that their absence forced him to testify as to matters that were more appropriately within the purview of a crime scene expert.

This Court has held that non-psychiatric experts, such as ballistic experts, should be provided only if the evidence is "both "critical' to the conviction and subject to varying expert opinion." *Scott v. Louisiana,* 934 F.2d 631, 633 (5th Cir.1991) (citations omitted). Further, the Eleventh Circuit has held that *Ake* and *Caldwell v. Mississippi,* 472 U.S. 320, 323 n. 1, 105 S.Ct. 2633, 2637 n. 1, 86 L.Ed.2d 231 (1985) taken together hold that the government is not required to automatically provide indigent defendants with expert assistance upon demand. An indigent defendant requesting non-psychiatric experts must demonstrate something more than a mere possibility of assistance from a requested expert. *Moore v. Kemp,* 809 F.2d 702, 712 (11th Cir.), *cert. denied,* 481 U.S. 1054, 107 S.Ct. 2192, 95 L.Ed.2d 847 (1987).

Yohey's only evidence that the requested experts were needed was an affidavit from his first counsel, Robert Willmann, dated July 21, 1986. In the affidavit Willmann speculated that "more than one bullet may have penetrated more than one person", "[m]ore than one person may have fired a weapon," and that "test firing of the alleged weapons was not done by the State for powder type and distance determination concerning penetration of both clothing and the skin of the persons involved."

Further, Yohey never introduced any evidence to the state trial court suggesting that any of the findings contained in the autopsy reports were either inaccurate or in any manner subject to disagreement between experts. Therefore, he has failed to establish a reasonable probability that the requested expert s would have been of assistance to the defense and that denial of such expert assistance resulted in a fundamentally unfair trial. *Moore,* 809 F.2d at 712.

Yohey claims that the state trial court's refusal to grant Yohey's requests for experts and the funding for those experts rendered his counsel ineffective by forcing his attorney to choose whether or not to use his own money for a defense. This choice created a conflict of interest that denied Yohey an adequate defense.

Although Yohey calls this a conflict of interest, it is not an attorney conflict of interest as the law recognizes. As noted in *Cuyler v. Sullivan,* 446 U.S. 335, 348 n. 14, 350, 100 S.Ct. 1708, 1718 n. 14, 1719, 64 L.Ed.2d 333 (1980) and confirmed in *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984), conflicts of interest between an attorney and his client arise when counsel actively represents an interest conflicting with the interests of his client, such as contemplated in Fed.R.Crim.P. 44(c) regarding joint representations of clients.

Instead, Yohey's claim is a straight ineffective assistance of counsel claim concerning whether his counsel erroneously failed to use his own money to aid in funding Yohey's defense. As such, this claim must be evaluated under the two-pronged test set forth in *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. at 2064. The test requires first, a showing that counsel's errors were so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment and second, a showing that counsel's deficient performance so prejudiced the defense that Yohey was denied a fair and reliable trial. *Lockhart v. Fretwell,* --- U.S. ----, 113 S.Ct. 838, --- L.Ed.2d ---- (1993); *Sawyer v. Butler,* 848 F.2d 582, 588 (5th Cir.1988), *affirmed,* 497 U.S. 227, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990).

In order to establish the deficiency prong of the *Strickland* test, Yohey must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. Counsel's decision not to hire experts falls within the realm of trial

strategy. Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices. "[G]reat deference is given to counsel, strongly presuming that counsel has exercised reasonable professional judgment." *Id.* (internal citations omitted). Further, Yohey offers only speculation that his counsel was even contemplating using his own funds to hire experts for the defense.

To evaluate whether counsel's alleged errors prejudiced the defense, Yohey must demonstrate that counsel's deficient performance renders the result of the trial "unreliable or the proceeding fundamentally unfair." *Lockhart* --- U.S. at ----, 113 S.Ct. at 844, (citing *Strickland* 466 U.S. at 687, 104 S.Ct. at 2064). If Yohey fails to show prejudice, the alleged deficiencies in his counsel's performance need not be considered. *Sawyer,* 848 F.2d at 588-89.

As stated earlier, the evidence at trial of Yohey's guilt was overwhelming. Any procurement of independent experts could very well have been deemed futile. Yohey offers only conclusionary allegations that the testimony of such experts would have changed the outcome of his trial. Finally, under the relevant Texas law, a psychiatrist was funded and all other non-psychiatric experts were properly denied. *See* Tex.Code Crim.P. art. 26.05. Yohey has failed to raise a reasonable probability of prejudice, and therefore, his allegations that his counsel's choice not to use personal funds to hire experts rendered his counsel ineffective is without merit.

Yohey also claims that he was denied effective assistance of counsel when the state court replaced Willmann with Hutton as his attorney. Yohey was satisfied with Willmann's representation and did not want him removed. Yohey claims that Hutton provided ineffective assistance due to his inexperience with criminal cases.

The right to counsel guaranteed by the Sixth Amendment does not include the right to counsel of Yohey's choice. *United States v. Magee,* 741 F.2d 93, 95 (5th Cir.1984). Therefore, Yohey was not entitled to have Willmann reappointed, regardless of his desire to keep Willmann as his counsel.

Also, an attorney can render effective assistance of counsel even if he has had little prior experience in criminal cases. *United States v. Lewis,* 786 F.2d 1278, 1281 (5th Cir.1986). "Whether

the defendant has been afforded his right to counsel depends on whether the attorney is reasonably likely to render and does render reasonably effective assistance, not on whether counsel has an extensive background in criminal defense work." *Id.* (internal citations omitted).

Yohey does not demonstrate how his eventual counsel's alleged inexperience rendered his assistance ineffective. Therefore, his claim of ineffective assistance of counsel is without merit.

Yohey claims that the state court erred in refusing to grant his requests for pretrial habeas relief. However, such claims for federal habeas relief for pretrial issues are mooted by Yohey's subsequent conviction. *See Fassler v. U.S.,* 858 F.2d 1016, 1018 (5th Cir.1988), *cert. denied,* 490 U.S. 1099, 109 S.Ct. 2450, 104 L.Ed.2d 1004 (1989) (citing *Medina v. People of the State of California,* 429 F.2d 1392 (9th Cir.1970) (appeal from writ of habeas corpus for unconstitutional bail revocation mooted by defendant's subsequent conviction).

Yohey argues that the state trial court erred in denying his motion to quash the indictment on grounds that the specific gun used for each murder was not alleged. He complains that if he is retried he will be placed in jeopardy if he is not notified which gun caused which death. Also, on appeal, Yohey claims that such failure to notify caused him to be uninformed as to the charges against which he was to defend.

The sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction. *Alexander v. McCotter,* 775 F.2d 595, 598 (5th Cir.1985). A claim of insufficiency of the indictment is valid for federal habeas purposes only when the indictment is so defective that under no circumstances could a valid state conviction result from facts provable thereunder. Such a determination can only be made by looking to the law of the state where the indictment was issued. *Id.* Further, a federal habeas court will not consider such claims when it appears that the sufficiency of the indictment was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case. *Id.*

In Yohey's case, the Texas Court of Appeals specifically found the indictment adequate in charging that the death of each victim was caused by "a gun." Under Texas law, such language was

sufficient to notify Yohey as to the charges against him so he could prepare an adequate offense. *Yohey,* 801 S.W.2d at 242.

Yohey's petition for discretionary review containing this issue was refused by the Texas Court of Criminal Appeals. By doing so, that court has held that the Texas courts have jurisdiction and that the indictment is sufficient for that purpose. *See Alexander,* 775 F.2d at 599. Therefore, Yohey has alleged no error for which federal habeas relief can be granted.

Finally, Yohey complains that the state trial court violated his rights so many times that the accumulated effects of all of the errors listed in his petition rendered his trial so fundamentally unfair that he should be granted relief from his conviction and sentence. Yohey, in effect, asks this Court to apply the use of a cumulative error analysis in a habeas case.

"[F]ederal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors "so infected the entire trial that the resulting conviction violates due process.'" *Derden v. McNeel,* 978 F.2d 1453, 1454 (5th Cir.1992) (en banc) (citation omitted).

However, a habeas petition may not just complain of unfavorable rulings or events in the effort to cumulate errors. *Id.* at 1458. As noted above, Yohey's state law evidentiary and insufficiency of the indictment claims never rose to the federal constitutional dimension necessary to warrant cumulative error analysis. Also, no error occurred in Yohey's other surviving claims, and they were found to be without merit. As such, Yohey has presented nothing to cumulate. Therefore, the district court's denial of Yohey's petition for federal habeas corpus relief is: Affirmed.