# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

---

No. 99-30520

---

ANDREW J FRANK,

                   Plaintiff-Appellant,

versus

JAMES J PRESTONBACH, Sergeant; WELTON KEYES, Corporal; JERRY
LARPENTER, Sheriff; TOM COLLINS, Warden; JOE NULL, Warden,

                   Defendants-Appellees.

---

Appeal from the United States District Court
for the Eastern District of Louisiana

(98-CV-2068)

---

June 12, 2000

Before WIENER and STEWART, Circuit Judges, ROSENTHAL[*], District Judge.

CARL E. STEWART, Circuit Judge:[**]

---

[*] District Judge of the Southern District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Plaintiff-appellant Andrew Frank appeals the district court's grant of summary judgment in favor of the defendants in his 42 U.S.C. § 1983 action alleging violation of the Eighth Amendment by use of excessive force. For the following reasons we affirm in part and reverse in part.

FACTUAL AND PROCEDURAL BACKGROUND

Frank, a Louisiana prisoner, filed this pro se, in forma pauperis action against defendants-appellees Sergeant James Prestonbach, Corporal Welton Keyes, Sheriff Jerry Larpenter, Assistant Warden Tom Collins, and Warden Joe Null ("Prestonbach" or collectively "defendants"). Frank alleged in his verified complaint that on April 6, 1998, while incarcerated at Terrebonne Parish Criminal Justice Complex ("Terrebonne"), he suffered seizures and was taken to the hospital. Frank alleges that after arriving back at Terrebonne hours later, Prestonbach pushed him into glass door No.41 while he was fully restrained, and as a result he suffered injuries to his lower back and neck.

In response to Frank's complaint the defendants filed a motion to dismiss, and alternatively for summary judgment. The defendants argued that Frank's complaint failed to allege an unnecessary and wanton infliction of pain. The defendants also argued that Frank was unable to establish that he had sustained any significant injury. The defendants also submitted several affidavits in support of their motion.

Prestonbach stated in his affidavit that he was escorting Frank back to his cell when Frank began to resist being brought to his cell and began to pull away from Correctional Officer Anthony Hindenberger ("Hindenberger"). Prestonbach stated that Frank made an aggressive movement toward him with his fist curled and his arm extended. Prestonbach further stated that

although Frank was handcuffed and shackled he believed that Frank could and was attempting to strike him. Prestonbach averred that as a result of Frank's actions he began to back him up toward door No. 41 to put him in a position to be restrained, and as he was moving Frank toward door No. 41 Frank jerked away from him and hit his head on the window of door No. 41.

Officer Hindenberger stated in his affidavit that he was assisting in transferring Frank from the booking area to his cell, and Frank refused three commands to move forward toward his cell. Hindenberger averred that as a result of Frank's conduct, he had to be physically held in the escort position to be returned to his cell. Hindenberger stated that during the transfer, Frank began to resist by pulling away, and Hindenberger lost his grip on Frank's arms. Hindenberger confirmed Prestonbach's assertion that Frank made a threatening gesture at Prestonbach and that, after being moved toward the wall, Frank had jerked his head and hit it on the window of the door.

Officer Keyes's affidavit stated that he was following the officers escorting Frank to his cell. His statements mirror those in Hindenberger's affidavit. All three officers stated that the force used was no more than was necessary to protect the officers and Frank from injury.

Marcel Null, the warden of the Terrebonne Parish facility in which Frank was incarcerated, stated in an affidavit that he had reviewed the report made concerning the incident and had talked to the involved officers. Null stated that the officers acted in an appropriate manner in response to Frank's actions and used only the force necessary to protect themselves and Frank.

The defendants also presented the affidavit of Dr. Charles Spence ("Dr. Spence"), a doctor familiar with Frank's medical history who had discussed the case with Mary Waalk, the EMT who examined Frank immediately after the incident. Dr. Spence stated that the medical

records did not reflect that Frank had sustained or complained about any injuries as a result of the incident. He further averred that EMT Waalk found no reason for medical treatment. Dr. Spence stated that if Frank had complained of striking his head on the doorway, it would have been noted in his medical records, and he would have received the necessary treatment. Dr. Spence stated that if his injury had been so severe that it could not be treated at the prison medical facility, Frank would have been transferred to the medical center. Frank's jail medical record was not attached to Dr. Spence's affidavit, nor has it been made part of the district court record.

In opposition to the defendant's motion Frank submitted three exhibits. Exhibit A is a report from Terrebonne dated the same day of the incident. In this report Prestonbach describes the events. This statement includes much of the same information given in Prestonbach's affidavit, including his assertion that Frank jerked away from him and hit his head on the window of door no. 41. Exhibit B is a copy of the interrogatories from Frank answered by the defendants, with Frank's written notes on the copy. Finally, Exhibit C is an inmate grievance filed by Frank in which he requested a copy of Terrebonne's policy on having inmates restrained while in the hallways. The district court considered these exhibits as Frank's only opposition to the defendant's motion. After the district court had granted summary judgment in favor of the defendants, Frank's memorandum in opposition to the defendant's motion was filed. The district court considered Frank's motion, because it had been timely mailed and determined that summary judgment was still proper.

DISCUSSION

4

Frank argues on appeal that the district court erred by granting summary judgment in favor of the defendants without reviewing the videotape of the incident. Frank also argues that the district court erred in granting summary judgment by misapplying the standard for excessive force set forth in Hudson v. McMillan, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed. 2d 156 (1992).

I.    Standard of Review

This court reviews the grant of a summary judgment motion de novo, using the same criteria used by the district court. Guillory v. Domtar Indus., Inc., 95 F.3d 1320, 1326 (5th Cir. 1996). Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of showing the district court that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets the initial burden of showing that there is no genuine issue, the burden shifts to the nonmovant to set forth specific facts showing the existence of a genuine issue for trial. Rule 56(e). The nonmovant cannot satisfy his summary judgment burden with conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 ( 5th Cir. 1994) (en banc). "We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Id.

II.    Excessive Force

5

In Hudson, the Supreme Court, reversing this court, held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is...whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7. On remand, this court found that there are several factors which are relevant in determining whether excessive force was used in violation of the Eighth Amendment: 1) the extent of the injury suffered; 2) the need for the application of force; 3) the relationship between the need and the amount of force used; 4) the threat reasonably perceived by the responsible officials; and 5) any efforts made to temper the severity of a forceful response. Hudson v. McMillian, 962 F.2d 522, 523 (5th Cir. 1992).

The Supreme Court in Hudson found that the absence of a serious injury to the inmate is relevant to the Eighth Amendment inquiry, but does not end it. Hudson, 503 U.S. at 7. The "extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Id. Post-Hudson, this court has found that "a prisoner must have suffered from the excessive force a more than de minimis physical injury, but there is no categorical requirement that the physical injury be significant, serious, or more than minor." Gomez v. Chandler, 163 F.3d 921, 924 (5th Cir. 1999).

In the present case, the district court found that there was no genuine issue of material fact as to whether the defendants had violated Frank's Eighth Amendment rights through the use of excessive force. The district court stated that the factual discrepancy between Frank's allegation

6

that Prestonbach pushed his head into the window or whether Frank jerked his own head into the window was "immaterial" because under either circumstance Prestonbach's actions would not have violated the Hudson standard.

The allegation contained in Frank's verified complaint is not immaterial. A verified complaint can be considered summary judgment evidence. RTC, 41 F.3d at 1024. Viewing the evidence presented by Frank in his verified complaint, specifically that Prestonbach "pushed Frank into glass door 41, while [p]laintiff Frank was fully restrained," in the light most favorable to Frank, the evidence is significant in weighing Prestonbach's state of mind. See Hudson, 503 U.S. at 8 (courts considering an excessive force claim should ask if the official acted with a sufficiently culpable state of mind, and if the wrongdoing was objectively harmful enough to establish a constitutional violation). Frank's allegation made in his verified complaint that Prestonbach pushed Frank into a glass door while Frank was fully restrained does create a genuine issue of fact as to whether the amount of force used by Prestonbach was a good-faith effort to maintain or restore discipline or was done maliciously and sadistically to cause harm.

In order to maintain an action for excessive force Frank must also show that any injury he suffered was more than de minimis, but the injury need not be a significant injury. See Siglar v. Hightower, 112 F.3d 191, 193; see also, Gomez, 163 F.3d at 923. In Frank's verified complaint he alleges that his lower back and neck were injured when Prestonbach allegedly pushed him into the glass door. The affidavit of Dr. Spence states that after the incident occurred Frank was examined by medical staff who found no visible sign of injury. However, Frank's medical records themselves were not considered by the district court. Furthermore, Dr. Spence did not state that he had examined Frank himself or that he had any direct knowledge about the extent or lack

7

thereof of Frank's injuries. Dr. Spence's testimony about the content of Frank's medical records is improper summary judgment evidence. See Barhan v. Ry-Ron Inc., 121 F.3d 198, 202 (5th Cir. 1997) (none of the documents cited in the affidavit were submitted to the district court, thus the affidavit was inappropriate for summary judgment evidence); FED. R. CIV. P. 56(e) ("supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence); FED. R. EVID. 801(c), 802 (a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted is not admissible). Thus, a genuine issue of material fact exists as to whether Frank suffered more than the de minimis injuries necessary to sustain his claim of an Eighth Amendment violation.

Frank also claims that the district court erred in granting summary judgment before it viewed a videotape of the incident. The videotape was never submitted by Frank or the defendants as summary judgment evidence. Thus, this argument is without merit. There is no support for the argument that a district court must view evidence not submitted to the court before deciding a summary judgment motion.

The district court granted summary judgment on all of Frank's claims against all of the defendants. However, on appeal Frank has not argued that the district court erred in granting summary judgment in favor of Keyes, Larpenter, Collins, or Null. Thus, any claims against these defendants have been abandoned on appeal. Yohey v. Collins, 985 F.2d 222, 224-25 (5th Cir. 1993).

CONCLUSION

8

The district court grant of summary judgment in favor of defendants Keyes, Larpenter, Collins and Null is AFFIRMED.  The district court's grant of summary judgment in favor of Prestonbach is VACATED and REMANDED to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, VACATED IN PART, REMANDED.