**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

December 14, 2006

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

-----

No. 06-40086
Summary Calendar

-----

JALIL RAJAII FLOYD,

Plaintiff-Appellant,

versus

CHIEF MEDICAL DIRECTOR OF UTMB;
M.D. DARYL LAU; FRANCIS CHARIAN;
M.D. BEN RAIMER,

Defendants-Appellees.

-----------------------------------------------------------------------
Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:03-CV-716
-----------------------------------------------------------------------

Before DeMOSS, STEWART and PRADO, Circuit Judges.

PER CURIAM:[*]

Jalil Rajaii Floyd, Texas prisoner # 572644, appeals the district court's order granting summary judgment in favor of the defendants and dismissing his 42 U.S.C. § 1983 civil rights complaint.

Floyd has contended that the defendants were deliberately indifferent to his serious medical needs in treating, or failing to treat adequately, his hepatitis C virus (HCV). Although in his original action, filed in September 2003, Floyd complained primarily about the delays in placing him in standard Interferon therapy, he subsequently shifted the focus of his allegations to complaints about the defendants' failure to treat him with a newer medication, pegylated Interferon, or Pegasys. He

-----

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

has maintained that Pegasys has been more effective in treating black HCV patients, like him, than the standard Interferon therapy. In his complaint, Floyd also asserted that the treatment of black inmates with HCV violated their equal protection rights.

In this appeal, Floyd focuses on the defendants' failure to place him in pegylated Interferon therapy. The defendants' summary-judgment evidence reflects that HCV is a disease that developed as recently as the early 1990s, that the standard Interferon treatment was not developed until the late 1990s, and that the pegylated Interferon therapy became available only in the past few years. Although the Texas Department of Criminal Justice (TDCJ) developed a standard treatment protocol for HCV in 2000–-a protocol under which Floyd was unsuccessfully treated for several months in 2003–-the protocol was amended to include the availability of pegylated Interferon therapy only in 2004, after the date Floyd filed his original complaint. The evidence establishes that Pegasys is only marginally more effective than the standard therapy and is unlikely to help a patient like Floyd, for whom the standard therapy was unsuccessful.

The defendants' summary-judgment evidence reflected that there was no genuine issue of material fact as to Floyd's deliberate-indifference claims, and Floyd failed to rebut that evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); FED. R. CIV. P. 56(c), (e). Floyd relies on treatment notes from a Dr. Robert Roe, who felt that Floyd should have been treated with the "new antiviral meds" once they became available. However, neither the notes from Dr. Roe nor any other evidence in the record supports Floyd's assertions that he faced a "substantial risk of serious harm" that would have been alleviated by pegylated Interferon therapy. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

In his appellate brief, Floyd had explicitly waived his claims against Dr. Francis Cherian. By failing to brief any claims regarding the equal-protection allegations and his claims regarding the delay in placing him standard Interferon treatment, Floyd has effectively abandoned those claims. *See Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993); FED. R. APP. P. 28(a)(9).

The judgment of the district court is AFFIRMED.