United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 23, 2005**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-21228
_____

RAYMOND DELEON MARTINEZ,

Petitioner - Appellant,

versus

DOUG DRETKE, Director, Texas Department of
Criminal Justice, Correctional Institutions Division,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before JONES, BENAVIDES, and CLEMENT, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Raymond DeLeon Martinez was convicted of capital murder
in Texas state court and sentenced to death. Martinez filed a
petition for a writ of habeas corpus relief under 28 U.S.C. § 2254
in the United States District Court for the Southern District of
Texas, Houston Division. The district court denied the petition,
and, sua sponte, denied Martinez a certificate of appealability
("COA"). Martinez then filed a Request for the Issuance of a
Certificate of Appealability with this court. For the following
reasons, Martinez's petition for COA is granted in part and denied
in part. However, his request for habeas relief is denied.

## I.  BACKGROUND

Martinez was tried and convicted in Texas state court of capital murder for the July 13, 1983 murder of Herman Chavis during the course of a robbery.[1]  SHTr. at 251.[2]  The following facts were presented to the jury.

On July 13, 1983, Martinez, accompanied by two other men, entered the Long Branch Saloon owned and operated by Herman Chavis, the victim, and his wife, Pauline Chavis Smith.  XX Tr. at 212-16, 369-70, 372-73, 414, 530-31.[3]  Smith recognized the three men from the previous Monday and Tuesday nights, when they came in, purchased beer, took only one sip, and left.  Id. at 214-18, 224, 253, 384.  On this date, the men ordered three Miller Lite beers and stood at the bar.  Id. at 225, 322.  Soon thereafter, one of the men locked the front door, produced a revolver, and told everyone to "hit the floor."  Id. at 226, 229, 232, 323-25, 328, 378, 381, 600.  Martinez also brandished a revolver and threatened a patron.  Id. at 600.  He then grabbed the barmaid, shoved the revolver into her ribs, and demanded the money from the cash drawer.  Id. at 226, 229, 232, 323-25, 328, 378, 381, 600.

---

[1]     On March 15, 1984, Martinez was convicted for the capital murder of Herman Chavis, but the conviction was reversed and remanded for a new trial on September 21, 1988.  SHTr. at 251 (citing Martinez v. State, 763 S.W. 413 (Tex. Crim. App. 1988)).  In 1989, Martinez was retried, convicted, and sentenced to death by lethal injection.  Id.

[2]     "SHTr." refers to the state habeas transcript.

[3]     The Roman numerals refer to the volume number of the trial transcript, which is abbreviated "Tr."

Martinez was seen reaching into the drawer, although it was later determined that he took no money.  Id. at 396, 234.  A verbal exchange between Chavis and the men ensued, after which Martinez pointed his gun at Chavis.  Id. at 601, 605, 607, 384, 386.  Several shots were fired.  Id. at 231, 386.  Chavis later died of a gunshot wound to the back of the head and a gunshot wound through the back that lodged in his right arm.  IXX Tr. at 15, 20-21.

At the punishment phase of Martinez's trial, the state presented evidence of extraneous offenses committed by Martinez, including:  the July 11, 1983 robbery/murder at the Don Ramon Lounge; the July 12, 1983 robbery at Elaine's Lounge; the July 15, 1983 murder of his own sister, Julia, and her boyfriend, Guillermo Chavez; and the July 21, 1983 murder of prostitute Tracy Pelkey.  XXIV Tr. at 43-45, 113, 145-58; XXV Tr. at 291, 298-300, 330-38; XXVI Tr. at 528-39, 553; XXVI Tr. 677-84, 692-97.  The state also presented evidence of Martinez's numerous prior convictions, including:  burglary for which he received a two-year prison term in 1964; armed robbery and assault for which he received a twenty-year prison term in 1969; jail-breaking for which he received a five-year prison term in 1969; and theft for which he received a five-year prison term in 1969.  SHTr. at 252.  The state presented other aspects of Martinez's violent criminal past through several of his family members.

Jerry DeAnda, Martinez's older brother, testified that Martinez (1) belonged to a gang known as the Texas Syndicate;

3

(2) planned to produce drugs for the gang; (3) stabbed a cell-mate during a former prison term; (4) escaped from jail in 1969; (5) stole DeAnda's gun with the intent to kill someone; (6) committed several violent robberies in the Fort Worth area; and (7) robbed and murdered someone in California while stealing chemicals for a crystal methamphetamine laboratory he intended to create for the gang. His sister, Raquel Martinez, testified that (1) the Government delayed Martinez's 1982 release from a fourteen-year prison term because he stabbed another inmate; (2) Martinez wanted to produce and sell drugs for the Texas Syndicate; (3) he twice threatened her with a gun; (4) he stole her car; (5) he attempted to abduct her; and (6) he admitted to committing seventeen robberies in the Fort Worth area.

The state also presented evidence, through a clinical psychologist, that a hypothetical person who committed the crimes allegedly perpetrated by Martinez would be likely to commit future criminal acts of violence, and that a person found to have deliberately committed these acts would warrant a finding of future dangerousness. The state also presented evidence that although Martinez had been found not guilty by reason of insanity and committed to Rusk State Hospital in 1967, he was found sane on October 21, 1968 and subsequently released. Several witnesses described Martinez as easily provoked and hot-tempered.

4

Through cross-examination and the presentation of its own witnesses, defense counsel[4] elicited the following testimony. Martinez's older brother, DeAnda, testified that their mother suffered from mental illness, for which she was hospitalized during their childhood. Id. at 893. He also testified that Martinez was committed to a state mental institution for a time. Id. at 894. Kathryn Cox, a former prison minister with the Salvation Army, testified that Martinez's acts constituted a self-destructive cry for help, and that she found him eager to learn, regretful for his past acts, and amenable to rehabilitation. She also testified that he was suicidal. Two Harris County Sheriff's Deputies, one former and one current, testified that they had interacted with Martinez several dozen times without incident. Defense counsel also elicited testimony that Martinez suffered from malnourishment while at Rusk State Hospital, was brutalized by prison guards while in care of the Texas Youth Commission, and was committed for a period of time to Wichita Falls State Mental Hospital.

Cross examination elicited some adverse information from Martinez's family members, including that they were not aware that Martinez had been diagnosed with any mental disorders during his commissions to state mental institutions. Rather, they testified that Martinez was very intelligent and had no mental health problems. Martinez's sister, Raquel Martinez, also testified that

---

[4] Martinez was represented by Ray Montgomery in both the 1984 and 1989 trials, as well as J.C. Castillo in the 1989 trial.

Martinez, in fact, had committed himself to mental institutions for the purpose of receiving free food and shelter.

At punishment, defense counsel also offered into evidence records from Wichita Falls State Mental Hospital demonstrating that: Martinez's mother was treated at San Antonio State Hospital for mental health issues; Martinez was a fearful and weak child who suffered from some form of epilepsy that went medically untreated because his father thought his "spells" were derived from "spirits"; Martinez began drinking at thirteen years of age; and that Martinez was hostile, violent, lost control and committed acts that he later regretted. The Wichita Falls State Mental Hospital records confirmed that Martinez's admissions to the hospital were voluntary, and indicated that he left the facility without permission at least twice. Additionally, records from the Texas Department of Corrections indicated that Martinez earned a GED while incarcerated.

On the evidence presented, the jury found beyond a reasonable doubt that: (1) Martinez's conduct caused the death of Chavis, and was deliberately committed with the reasonable expectation that Chavis's death would result; (2) there was a probability that Martinez would commit future criminal acts of violence that would constitute a threat to society; and (3) Martinez's conduct in killing Chavis was an unreasonable response to any provocation by Chavis. The court then sentenced Martinez to death.

6

Martinez unsuccessfully appealed to the Texas Court of Criminal Appeals, Martinez v. State, 867 S.W.2d 30 (Tex. Crim. App. 1993), reh'g denied, (October 20, 1993) and then sought certiorari from the Supreme Court, which denied his petition. Martinez v. Texas, 512 U.S. 1246 (1994). Martinez filed a state application for a writ of habeas corpus on April 24, 1997, asserting ineffective assistance of counsel. During the state habeas proceedings, Martinez requested funds and an evidentiary hearing to develop his claim. The state court denied both requests. Upon review of Martinez's habeas writ, the State's answer, affidavits of Martinez's counsel, and the State's proposed findings of fact and conclusions of law,[5] the state habeas court denied Martinez's writ, finding that he had not been deprived of effective assistance of counsel. The Court of Criminal Appeals upheld the state court's habeas determination on August 18, 1999.

Martinez filed a timely § 2254 petition for a writ of habeas corpus in federal district court. In 2001, Martinez filed an amended writ incorporating the affidavits of Dr. Stephen K. Martin, a neuropsychologist; Dr. Paula Lundberg-Love, a psychologist specializing in psychopharmacology; and Michael W. Jewell, a fellow inmate. On February 6, 2003, the district court held an evidentiary hearing on the following issues: (1) whether Martinez was mentally ill at the time of his offense; (2) whether his trial

---

[5] Martinez failed to file any proposed findings of facts and conclusions of law on or before the July 8, 1999, deadline.

7

counsel was ineffective for failing to present an insanity defense; and (3) whether there was cause for any procedural default of these claims.[6] At the hearing, Martinez submitted evidence that he has a family history of mental illness, was exposed to neurotoxins in utero and through adolescence when he picked cotton as a migrant farm worker, was physically abused by an older brother, was physically abused by prison guards while in care of the Texas Youth Commission, suffered untreated epileptic seizures, and was previously adjudged not guilty by reason of insanity for an unrelated crime in 1967. With leave of court, the evidentiary hearing was later supplemented with depositions. On November 25, 2003, the district court issued a memorandum and order and entered a final judgment, denying Martinez's petition for a writ of habeas corpus, and denying, sua sponte, a COA.

On December 19, 2003, Martinez filed a Request for the Issuance of a Certificate of Appealability with this court, maintaining that he was deprived of his constitutional right to effective assistance of counsel by his counsel's failure to: (1)

---

[6]     In furtherance of Martinez's claims, the district court granted Martinez an evidentiary hearing in 2003 and allowed him to present evidence that he had not presented to the state court. This raised exhaustion of state remedies and futility issues, but the district court predicated its substantive ruling on the fact that the state court's refusal to grant a hearing and funds to develop his claim during the state habeas action constituted cause for Martinez's procedural default. However, the district court found that no prejudice resulted from the state court's refusal of funds. Martinez v. Dretke, Crim. No. H-99-3147, slip op. at 11-15 (Tex. D.C. November 25, 2003).
    The State has not objected to the district court's mode of procedure, i.e., its conduct of an independent evidentiary hearing, so we need not consider the matter further. Suffice it to note that the court's procedure remedied Martinez's complaint about the insufficiency of state processes to allow him to develop and present additional mental health evidence.

8

conduct an adequate investigation into his mental health background; (2) introduce evidence of neurological impairment and a prior adjudication of not guilty by reason of insanity as a mitigating factor and assert an insanity defense during the guilt/innocence phase of his trial; and (3) introduce evidence of his neurological impairment as a mitigating factor during the punishment phase of his trial. On December 28, 2004, we invited additional briefing on the latter two issues.

## II. STANDARD FOR GRANTING A COA

Martinez filed his § 2254 petition for a writ of habeas corpus after the effective date of the Antiterrorism & Effective Death Penalty Act ("AEDPA"), April 24, 1996. Therefore, the petition is subject to the procedures imposed by AEDPA and post-AEDPA precedent. Lindh v. Murphy, 521 U.S. 320, 336, 117 S. Ct. 2059, 2068 (1997).

Under AEDPA, Martinez must obtain a COA before an appeal can be taken to this court. 28 U.S.C. § 2253(c)(2). This court may grant a COA only upon finding that Martinez has made a substantial showing of denial of a constitutional right. Id.; Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 1603 (2000). To satisfy this standard, Martinez must demonstrate that reasonable jurists could find the district court's resolution of his constitutional claims debatable or that reasonable jurists could conclude that the issues presented are adequate to deserve

encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 1039 (2003). "[A] COA ruling is not the occasion for a ruling on the merit of petitioner's claim[.]" Id. at 331, 123 S. Ct. at 1036. Instead, this court must engage in a narrow threshold "overview of the claims in the habeas petition and a general assessment of their merits." Id. at 336, 123 S. Ct. at 1039. Because Martinez's case involves the death penalty, we must resolve any doubts as to whether a COA should issue in his favor. Hernandez v. Johnson, 213 F.3d 243, 248 (5th Cir. 2000).

Upon grant of a COA, to obtain habeas relief Martinez must demonstrate that the state court proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court's decision falls within this rubric "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413, 120 S. Ct. 1495, 1523 (2000). A state court decision may also qualify under § 2254(d)(1) "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413, 120 S. Ct. 1523. Under § 2254(d)(1), we need only determine whether the state court's application of clearly

established federal law was objectively unreasonable. <u>Neal v. Puckett</u>, 286 F.3d 230, 236 (5th Cir. 2002) (en banc), <u>cert.</u> <u>denied</u>, 537 U.S. 1104, 123 S. Ct. 963 (2003). "We have no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state supreme court's application of [federal law] is erroneous or incorrect." <u>Id.</u>, 286 F.3d at 236.

### III. ANALYSIS

Martinez maintains that he was deprived of his constitutional right to effective assistance of counsel by his counsel's failure to: (1) conduct an adequate investigation into his mental health background; (2) introduce evidence of neurological impairment and a prior adjudication of not guilty by reason of insanity as a mitigating factor and assert an insanity defense during the guilt/innocence phase of his trial; and (3) introduce evidence of his neurological impairment as a mitigating factor during the punishment phase of his trial.

To prevail on this claim, Martinez must demonstrate, as to each issue for which he requests a COA, that: (1) his counsel's performance was deficient; and (2) his counsel's deficient performance prejudiced his defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 104 S. Ct. 2052, 2065 (1984). There is a strong presumption in favor of competency. <u>Id.</u> at 689, 104 S. Ct. at 2065. Counsel's performance was deficient only if it "fell below an objective standard of reasonableness" as measured by "prevailing

11

professional norms." Id. at 688, 104 S. Ct. at 2065. Review of counsel's performance "must be highly deferential" and take into account "counsel's perspective at the time." Id. at 689, 104 S. Ct. at 2065. We must make every effort to avoid "the distorting effect of hindsight." Id. Where counsel has engaged in an adequate investigation, any strategic decision made as a result of that investigation "fall within the wide range of objectively reasonable professional assistance." Id. "A conscious and in-formed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." United States v. Jones, 287 F.3d 325, 331 (5th Cir.) (quoting Garland v. Maggio, 717 F.2d 199, 206 (5th Cir.1983)), cert. denied, 537 U.S 1018, 123 S. Ct. 549 (2002).

Even if we find counsel's performance deficient, Martinez must demonstrate prejudice. Strickland, 466 U.S. at 692, 104 S. Ct. at 2067. Martinez must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S. Ct. at 2068. In capital cases, the standard is "whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not

12

warrant death." Id. at 695, 104 S. Ct. at 2069. Under Strickland's conjunctive test, Martinez's failure to demonstrate either deficiency or prejudice must result in the failure of his claim. Id. at 687, 104 S. Ct. at 2065.

### 1. Inadequate Investigation

Martinez's request for a COA on this issue is denied. Martinez contends that he was denied effective assistance of counsel by virtue of his counsel's failure to adequately investigate his mental health background. Martinez argues that his mental health history, his exposure to neurotoxins in utero and as a migrant child farm worker, and his use of anti-psychotic medications should have put counsel on notice that a more thorough investigation into his background was required. The district court dismissed Martinez's claims as overstated given the evidence presented at trial regarding the mental health background of Martinez and his mother, and it denied a COA on this issue. We affirm that denial, and also deny Martinez's instant request for a COA on this claim.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. . ." Id. at 691, 104 S. Ct. at 2066. "A particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments." Id. A brief overview of the

13

instant claim evinces that counsel conducted a reasonable investigation into Martinez's mental health history and made reasonable decisions to forgo further investigation into certain lines of inquiry based on their professional judgment.

In brief, Martinez's 1989 trial counsel drew upon information gained during the 1984 prosecution to investigate further Martinez's mental health background, criminal past, and family history in preparation for the 1989 trial. In this effort, counsel obtained additional mental health records, hired an investigator, conducted additional investigatory interviews of Martinez's family members, and sought the assistance of a psychiatrist who declined to help. 3 RR at 12 (1984); 37 RR at 1375-76, 1391, 1399;[7] HR at 30.[8] As of 1989, Martinez's family members, bittered by the fact that he had murdered his sister and reeling from threats he had made against some of them, were extremely reluctant to assist in his defense. Yet, counsel was able to extract some additional information from them, including that none appeared to have been migrant farm workers. Because Martinez's family members were unwilling or unable to help at the time, the fact that counsel had little family history with which to work was not due to ineffective representation but to the predicament Martinez created for himself.

---

[7]     "RR" refers to the 1984 trial record.

[8]     "HR" refers to the federal habeas court hearing record.

14

Moreover, nothing in counsel's personal and professional experience, in their interactions with Martinez, or in Martinez's conditions of confinement, put counsel on notice that further inquiry was warranted. See Strickland, 466 U.S. at 691, 104 S. Ct. at 2066 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."). Both defense counsel had been migrant child farm workers and had picked cotton, and both had extensive backgrounds in handling mentally-ill people. Both had interacted with Martinez, without incident or indication of psychosis, during a 13-month period when Martinez was not taking anti-psychotic drugs. Although aware that Martinez had been prescribed anti-psychotic medications, counsel's experience taught that anti-psychotic drugs were often prescribed in prison to alleviate the anxieties of incarceration rather than to treat a serious mental illness. Counsel also knew that Martinez had been diagnosed with an anxiety disorder. Thus, the decision of Martinez's counsel to forgo further inquiry into his mental health was not unreasonable.

Contrary to Martinez's contentions, the 2003 post-reconciliation testimony of his family members, the testimony of experts not involved in the 1989 trial proceedings, and the production of a prisoner-witness whom Martinez failed to identify during the state trials in 1984 and 1989, see HR at 200-237; HR at 200; HR at 40, 47, 55, 88-90, 170-72, are irrelevant to counsel's perspective in 1989. Thus, this evidence is insufficient to

15

demonstrate that counsel failed to conduct an adequate investigation into Martinez's mental health background in preparation for the 1989 trial.

Upon an overview of Martinez's claim and a general assessment of its merit, we conclude that Martinez has failed to make a substantial showing that the level of investigation conducted by his counsel deprived him of his constitutional right to effective assistance of counsel. Circuit precedent fully supports this conclusion.[9] Reasonable jurists would not debate the district court's conclusion. Therefore, a COA will not issue as to this claim.

### 2. Failure to Introduce Mitigating Evidence During the Guilt/Innocence and Punishment Phases of Trial

Martinez also sought COA on two other claims: (1) that his counsel failed to introduce evidence of Martinez's neurological impairment and prior adjudication of not guilty by reason of insanity during the guilt/innocence phase of his trial to support an insanity defense; and (2) that his counsel were deficient for failing to introduce evidence of his mental problems and neurological impairment as a mitigating factor during the punishment phase. The district court denied both claims on the

_____

[9] See Clark v. Collins, 19 F.3d 959, 964-65 (5th Cir. 1994) (rejecting petitioner's claim of deficient performance where existing psychiatric evaluations confirmed counsel's own observations of the petitioner and counsel had no basis in fact or reason to conclude that additional psychiatric evaluations were merited); Riley v. Dretke, 362 F.3d 302 (5th Cir. 2004) (finding counsel's interactions with the petitioner, petitioner's probation and juvenile records, conversations with petitioner's family members sufficient to support counsel's conclusion that petitioner was not suffering from mental illness).

merits and declined to issue a COA for either.  To this extent, the district court's determinations were in error.

The relevancy threshold for mitigation evidence is extremely low, and is satisfied by evidence that "'tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value.'"  Tennard v. Dretke, 124 S. Ct. 2562, 2570 (2004) (quoting McKoy v. North Carolina, 494 U.S. 433, 440-441, 110 S. Ct. 1227, 1232 (1990)).  In capital cases, the relevancy standard translates into "whether the evidence is of such a character that it might serve as a basis for a sentence less than death."  Id. at 2571 (internal citation and quotations omitted).  Here, reasonable jurists could debate the Strickland issues raised by counsel's failure to present an insanity defense at trial and to argue at sentencing that Martinez suffered from insanity and/or neurological impairments that affected his ability to conform his conduct to the law's requirements.  Therefore, we granted COA as to each of these issues.  Nevertheless, having reviewed the merits briefs and the record in full, we deny Martinez's request for habeas relief, finding the state habeas court's determinations consistent with federal law as established by the Supreme Court and distilled by this Circuit.

Resolving these claims, the state habeas court made the following findings:  the jury had before it evidence regarding Martinez's mother's mental health as well as his own; several

17

psychological evaluations determined that Martinez did not suffer from any gross psychiatric disorders or otherwise demonstrate psychotic symptoms; Martinez's claims of neurological impairment were legally meritless; and Martinez's counsel investigated, developed and presented mitigating evidence at trial. SHTr. at 255-58. Finally, the court found that even if Martinez's counsel was deficient, Martinez was not prejudiced given the overwhelming evidence of his guilt for the crime of conviction, his prior convictions, and his extraneous offenses. Id.

For reasons explained below, the state court's determination that no constitutional error attended counsel's decisions were neither contrary to nor did they result from an unreasonable application of federal law. Viewing counsel's performance through a "'highly deferential'" lens and with a view to "'the facts and resources available to [counsel] at the time of trial,'" Williams v. Cain, 125 F.3d 269, 276 (5th Cir. 1997) (quoting Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994)), it is apparent that counsel's strategic decisions were based on their professionally informed and competent assessment of the facts of Martinez's case in 1989. As such, their decisions fell "within the wide range of objectively reasonable professional assistance," and, thus, are incapable of forming the basis of an ineffective assistance of counsel claim. Strickland, 466 U.S. at 689, 104 S. Ct. at 2066.

First, on direct appeal, the state habeas court found that the presumption of insanity issue was not preserved for review

18

because, after counsel submitted a motion on the issue, the state trial court never formally resolved the motion and Martinez's counsel never renewed it.  Martinez v. State, 867 S.W.2d 30, 33 (Tex. Crim. App. 1993).  The state habeas court further found that, even if the issue was properly preserved, the subsequent jury determination of sanity in 1968 and Martinez's consequent release were sufficient to overcome the presumption.  Id.  Because federal courts are not entitled to review state court dispositions that rest on adequate and independent state grounds, see Lambrix v. Singletary, 520 U.S. 518, 522-23, 117 S. Ct. 1517, 1522 (1997) (quoting Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553 (1991)), we must be satisfied with the state habeas court's determinations.

Notwithstanding, counsel's decision not to argue a presumption of insanity during the guilt/innocence phase was an exercise of professional judgment consistent with Texas law and counsel's prior experience in the 1984 trial.  Although Martinez argues that his one-and-a-half-year commitment to a state mental institution, from 1967 through 1968, raised a presumption of insanity assertable at his 1989 trial, under Texas law, "an adjudication of incompetency is based on one's capacity at the time of trial."  Hall v. State, 766 S.W.2d 903, 906 (Tex. Crim. App. 1989) (holding that a "a five-year gap between [the defendant's] breakdown and the trial with no further hospitalization . . . [does not] constitute evidence tending to show incompetency").  Here,

19

there was a twenty-one year gap between Martinez's 1968 release from the state mental institution and his 1989 trial. In addition, Martinez's voluntary 1969 guilty plea to robbery wherein a court found him legally sane, eviscerated any presumption that may have arisen from his 1967 commitment. Even if an assertable presumption did exist in 1989, as the state court found, it would not have been difficult for the state to rebut the presumption given that the 1967 verdict was vitiated in 1968 by a subsequent jury determination of sane. Moreover, the trial transcript indicates that counsel did raise the presumption in the 1989 trial, and that it was adequately rebutted. Finally, defense attorney Montgomery argued the 1967 acquittal by reason of insanity at the 1984 trial and received an adverse jury verdict within fifteen minutes. Hard experience deterred repetition of this course of action in the 1989 trial. HR at 43, 106-107.

Second, counsel had no obligation to assert an insanity defense that they deemed so meritless as to constitute a fraud on the court and otherwise adverse to Martinez's case. See Williams, 125 F.3d at 278 (rejecting claim of ineffective assistance where counsel declined to introduce mitigating evidence that "would have opened the door to more damaging evidence under cross-examination"). Moreover, counsel was not required to assert an insanity defense where, after proper investigation, counsel determined that a more viable, and less fraudulent, defense was available. Cf. Profitt v. Waldron, 831 F.2d 1245, 1248-49 (5th

20

Cir. 1987). Contrary to Martinez's contentions, circuit precedent requiring counsel to raise an insanity defense where it is the only viable defense is acutely distinguishable on the facts, and, as such, inapposite here.[10]

In Martinez's case, potential defense theories included failure of "the system" to intervene during Martinez's troubled youth and insanity. Counsel determined the former most viable and the latter potentially fraudulent. Counsel's assessment is supported by the record. Psychological evaluations conducted in 1979, 1986, and 1988 concluded that Martinez did not suffer from any psychological disorders.[11] Although Martinez proffered expert testimony in 2003 that his exposure to pesticides in utero and through adolescence could have caused a brain disorder that rendered him unable to control his impulses, his own expert witness, Dr. Love, admitted that such a diagnoses would be no more than post-hoc conjecture otherwise contradicted by Martinez's mental health history as it stood in 1989. See Love Dep. at 148-258 (admitting that psychiatric diagnoses are not constant, that

---

[10] Martinez's reliance on Profitt is misplaced because that case is distinguishable from the instant matter. In contrast to the facts in Profitt, counsel in this case, explored the possibility of an insanity defense and ruled it out after taking both obvious and non-obvious investigatory measures; provided reasonable tactical bases for not investigating the issue further and declining to assert an insanity defense; and raised other defenses that were not only plausible, but also supported by Martinez's mental health and criminal record. See Profitt, 831 F.2d at 1248-49.

[11] These evaluation were not admitted at trial but were included in the trial "statement of facts" and considered as part of the trial record by the state habeas court.

she would only diagnose Martinez as suffering from "periodic" and "episodic" schizophrenia, and that she could not determine, without allowing for a significant margin of error, Martinez's mental condition during his 1989 trial). Additionally, as previously discussed, counsel had no basis in personal experience that suggested the viability of an insanity defense based on Martinez's exposure to neurotoxins in the course of migrant farm work. Moreover, as admitted by another of Martinez's expert witnesses, Dr. Freedman, nothing in the mainstream media put counsel on notice of such a connection. See Freedman Dep. at 76-77 (conceding that literature existing in 1989 supporting the theory of pesticide-induced psychosis may have been known to the medical community, but not to the public at large).

One of Martinez's counsel, Ray Montgomery, submitted an affidavit averring that: he had represented or prosecuted hundreds of defendants who were, or claimed to be, mentally ill; in his interactions with Martinez, over the course of several years, Martinez never acted in a manner demonstrative of insanity or incompetence; Martinez's prison record and conduct were consistent with his conclusion and that of other attorneys representing Martinez, and Martinez's own family members shared this view. See SHTr. at 257 (Respondent's Original Answer, Exhibit A, Aff. of Ray Montgomery).

Based on the facts of Martinez's case, his counsel determined that assertion of an insanity defense would constitute

22

a fraud on the court. Therefore, counsel decided to forgo an insanity defense in the guilt/innocence phase, and instead advanced as the primary defense theory the "failure of the system" to intervene during Martinez's troubled youth. This mode of defense was supported by Martinez's criminal history and the abuse that he purportedly suffered at the hands of detention facility personnel. Under the facts as they existed at the time, counsel's decision was reasonable.

Third, counsel's decision not to introduce evidence of neurological impairment (i.e., organic brain damage) as mitigating evidence at the punishment phase constituted reasonable and protected professional judgment. As we have held, evidence of organic brain injury presents a "double-edged" sword, and deference is accorded to counsel's informed decision to avert harm that may befall the defendant by not submitting evidence of this nature. Kitchen v. Johnson, 190 F.3d 698, 703 (5th Cir. 1999). "If such an omission is based on well informed, strategic decisions, it is 'well within the range of practical choices not to be second-guessed.'" Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) (quoting Wilkerson v. Collins, 950 F.2d 1054, 1065 (5th Cir. 1992)).

Under Texas law, a jury in a capital case must determine "whether there is a probability that the Defendant would commit criminal acts of violence that would constitute a continuing threat to society." TEX. CODE OF CRIM. PROC. ART. 37.071 § 2(b)(1) (Vernon

23

2004).  During the punishment phase, the state introduced expert testimony that a hypothetical person who committed the crimes with which Martinez was charged would warrant a future dangerous finding.  The introduction of evidence that Martinez suffered from organic (i.e., permanent) brain damage, which is associated with poor impulse control and a violent propensity, would have substantiated the state's evidence and increased the likelihood of a future dangerousness finding.  In lieu of introducing this potentially damaging evidence, counsel presented other mitigating evidence during the punishment phase.  On cross and direct examination, counsel elicited testimonial evidence of Martinez's difficult childhood, his mother's hospitalization for mental illness, his own commission to a mental health institution, and his benighted childhood during which he suffered medical neglect, malnourishment, and abuse at the hands of family members and state prison guards.  Thus, counsel's decision not to introduce evidence of organic brain damage, given the availability of other, less damaging, mitigating evidence, fell well within the bounds of sound trial strategy.

Even if counsel's strategies fell below professional norms, they cannot form the basis of a constitutional ineffective assistance of counsel claim because there is no evidence that they prejudiced Martinez or "permeated [his] entire trial with obvious unfairness."  United States v. Jones, 287 F.3d 325, 331 (5th Cir.), cert. denied, Jones v. United States, 537 U.S. 1018, 123 S. Ct. 549

(2002).  In assessing prejudice, we "must consider the totality of the evidence before the judge or jury."  Strickland, 466 U.S. at 695, 104 S. Ct. at 2069.  Here, the nature of the evidence against Martinez advises against a prejudice finding.

In addition to mitigating evidence presented by the defense, the jury also had before it evidence of Martinez's methodical planning and execution of the crime of conviction.  The state propounded evidence that Martinez and his accomplices "cased" Chavis's bar in preparation for the robbery.  On July 11 and July 12, 1983, Martinez and one accomplice entered the bar, ordered a beer, drank very little, and left.  Martinez and two accomplices returned on July 13, 1983, and shot and killed Chavis in the process of robbing the bar.  The jury also had before it evidence of Martinez's subsequent violent and murderous 1983 crime spree, and his numerous prior convictions for burglary, robbery, jail-breaking, and theft.  The evidence depicted a man capable of planning and executing criminal acts and victimizing anyone who would get in his way, which was more than sufficient to belie any "tragic impulse" defense that Martinez could have asserted.

In sum, even if counsel had asserted the presumption and defense of insanity and presented evidence of neurological impairment in mitigation during Martinez's trial, it is highly improbable that the outcome would have been different.  Id. at 694-95, 104 S. Ct. at 2068-69.

25

**CONCLUSION**

As to his first COA claim, failure to investigate, Martinez failed to demonstrate that jurists of reason would debate the district court's resolution of the issue. Therefore, we deny a COA on this issue. As to the remaining COA claims, failure to present an insanity defense and evidence of neurological impairment during the guilt/innocence and punishment phases of Martinez's trial, we find that jurists of reason could debate the district court's resolution of these claims, and, thus, issue a COA as to each claim. However, we conclude that Martinez has failed to show that the state habeas court's resolution of these claims resulted in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law. Therefore, we deny Martinez's request for habeas relief.

**COA GRANTED IN PART, DENIED IN PART**. Habeas Relief **DENIED**. Judgment of the district court is **AFFIRMED**.

26