PER CURIAM: *
Mace McGrew appeals the district court’s denial of his 28 U.S.C. § 2255 motion, in which he attacked his conviction and sentence for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). We AFFIRM.
FACTS AND PROCEEDINGS
McGrew was present at his girlfriend Renee Chapman’s house when two probation officers and two sheriffs deputies arrived to conduct a probation compliance check on Chapman. On their arrival, Chapman consented to a search of the house, at which McGrew spent several nights each week. During their search of the bedroom Chapman shared with McGrew, the probation officers found an AK-47-style rifle in a blue sheath concealed under their bed, as well as a loaded ammunition magazine, a locked lockbox, and a bulletproof vest. Elsewhere in the bedroom, the officers found a box of .40 caliber handgun ammunition, an empty shoulder holster, a night vision device, and a shoebox containing marijuana. Chapman denied that the rifle was hers and told the officers that another man, later identified as William Tutt, had brought some “stuff’ over to the house.
*344 McGrew was sitting on a couch in the living room while the officers conducted this search. As the officers brought the discovered items into the living room, McGrew admitted that the marijuana was his but denied ownership of the rifle. Considering the possibility that there was a handgun elsewhere in the house because of the discovery of the empty holster and box of handgun ammunition, the officers continued to search the house and attempted to open the lockbox discovered in the bedroom. Chapman and McGrew both told the officers that the lockbox was not theirs, that they did not have a key, and that it belonged to Tutt. McGrew then called Tutt and asked him to bring the key, Tutt arrived with the key, the officers opened the lockbox, and in it they discovered money and another ammunition magazine. The officers allowed Tutt to leave the house with the money but arrested McGrew for possession of the marijuana and the rifle.
McGrew and Tutt were both indicted for possessing the rifle as felons, in violation of 18 U.S.C. § 922(g)(1), and tried. Because McGrew was being prosecuted under a constructive possession theory, the key issue at trial was whether McGrew had known about the rifle being under the bed. McGrew’s primary defense was that, while he had allowed Tutt to store a number of items in the bedroom, he had not known what they were and had not known about the rifle. To this end, Chapman testified that, on the night that Tutt had brought the items, including the rifle, to the house, McGrew had drunk approximately five beers while on prescription pain medication, and that by the time Tutt came over McGrew was semiconscious or unconscious.
The Government presented testimony from all four officers. One of the officers, Sheriffs Deputy Robert Gallegos, testified that McGrew, on being questioned after the search, initially denied that the rifle was his but eventually admitted that he had known that the rifle was under the bed. Tutt took the stand in his own defense and inculpated McGrew, testifying that, trying to dispose of the rifle, he had contacted McGrew who had agreed to accept possession of it.
At the conclusion of trial, the jury found McGrew guilty and Tutt not guilty, and the district court sentenced McGrew to 51 months’ imprisonment. McGrew appealed, asserting claims of evidentiary insufficiency, of a due process violation resulting from a discovery error on the part of the Government, and of a Sixth Amendment Confrontation Clause violation. We affirmed the judgment of the district court. United States v. McGrew, 165 Fed.Appx. 308 (5th Cir.2006).
Over a year later, McGrew filed a 28 U.S.C. § 2255 motion for post-conviction relief, alleging ineffective assistance of appellate counsel and a Fifth Amendment claim. The Fifth Amendment claim was based on the officers’ having questioned McGrew about the rifle without first informing him of his Miranda rights. The district court denied this motion without holding an evidentiary hearing, but we granted a certificate of appealability and reversed the district court in part, remanding for an evidentiary hearing into the Fifth Amendment claim. United States v. McGrew, 897 Fed.Appx. 87, 95 (5th Cir.2010).
At the evidentiary hearing, Deputy Gallegos admitted that McGrew was not free to leave after he admitted to possession of the marijuana. Gallegos also admitted that he questioned McGrew about the rifle hoping that McGrew would incriminate himself. Gallegos further conceded that he had not given McGrew Miranda warnings prior to questioning him. *345 McGrew argued, and the district court held, that the admission of Gallegos’s testimony regarding McGrew’s statements that he knew about the rifle violated McGrew’s Fifth Amendment rights. However, because McGrew did not raise this issue prior to his § 2255 motion, the district court held it to be procedurally defaulted.
McGrew contended that he could establish cause to overcome the procedural default because his trial counsel, Edward Bravenec, had provided ineffective assistance by not bringing a motion to suppress Gallegos’s testimony about McGrew’s statements. McGrew asserted that Brave-nec had access to Gallegos’s police report prior to trial and that it indicated that Gallegos would testify that McGrew had said that he knew about the rifle. At the evidentiary hearing, Bravenec testified that he had believed, having read a number of the police reports including Gallegos’s and having spoken to McGrew, that Gallegos’s testimony would be that McGrew had known there were items under the bed but had not known that they included a rifle. Bravenec thought this testimony would be favorable to the defense and therefore did not move to suppress.
In light of Bravenec’s explanation, the district court held that Bravenec’s failure to suppress Gallegos’s testimony about McGrew’s statements was “sound trial strategy” and did not amount to ineffective assistance. Therefore, McGrew had failed to demonstrate cause to excuse the procedural default of his Fifth Amendment claim. The district court granted McGrew a certificate of appealability on this issue, though, and McGrew now appeals.
STANDARD OF REVIEW
In considering a district court’s denial of a § 2255 motion, we review factual findings for clear error and conclusions of law de novo. United States v. Underwood, 597 F.3d 661, 665 (5th Cir.2010). “A movant is barred from raising jurisdictional and constitutional claims for the first time on collateral review unless he demonstrates cause for failing to raise the issue on direct appeal and actual prejudice resulting from the error.” United States v. Patten, 40 F.3d 774, 776 (5th Cir.1994) (per curiam). “Ineffective assistance of counsel ... is cause for a procedural default.” Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2689, 91 L.Ed.2d 397 (1986). To demonstrate ineffective assistance of counsel, a defendant must show (1) that his “counsel’s representation fell below an objective standard of reasonableness,” and (2) that this ineffectiveness was “prejudicial to the defense.” Strickland v. Washington, 466 U.S. 668, 688-92, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). “There is a strong presumption in favor of competency.” Martinez v. Dretke, 404 F.3d 878, 885 (5th Cir.2005). “A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.” Id. (quoting United States v. Jones, 287 F.3d 325, 331 (5th Cir.2002)).
DISCUSSION
McGrew advances two arguments for why Bravenec was constitutionally ineffective. First, he argues that the record indicates that Bravenec failed to recognize at the time of trial that a motion to suppress was warranted or would have been successful. Second, he asserts that, because of Gallegos’s police report, Bravenec knew or should have known that Gallegos would testify that McGrew had stated that he knew about the rifle, and that Brave-nec’s failure to move to suppress in light of *346 that knowledge was not a sound trial strategy or otherwise effective assistance.

1. Failure to recognize suppressibility

McGrew points to the transcript of a hearing before the district court after trial but before sentencing in which he successfully moved to have Bravenec dismissed as his counsel. McGrew claims that Brave-nec’s testimony at this hearing show that he was unaware that a motion to suppress McGrew’s statements was even a possibility. Specifically, McGrew points to Brave-nec’s explanation that: “The motion to suppress, the reason I did not file it is because in my view, after reviewing the facts, that it would be in fact a frivolous motion. They had a clear right to search, they had a warrant to search the residence.” McGrew contends that this comment allows the inference that Bravenec was unaware that there was a possibility of suppressing any testimony about McGrew’s statements, as Bravenec focuses solely on the possibility of suppressing items recovered in the officers’ search.
However, McGrew’s characterization of this testimony does not fairly reflect the full context of the hearing. At the hearing, Bravenec was responding specifically to a complaint raised by McGrew that he had failed to file a motion to suppress the evidence discovered in the search of the house. In explaining his disagreements with Bravenec, McGrew had stated that “I would have prevented any evidence from being used that was gained illegally,” repeatedly argued that his arrest was without probable cause, invalidating any search incident to his arrest, and later clarified that “[a]s far as them searching Ms. Chapman’s home, I don’t understand how she can sign a consent to search her home and then contraband found by her probation office and I get arrested for it.”
Because Bravenec’s statement that a motion to suppress the physical evidence seized in the search would not have been warranted was in response to McGrew’s argument on that issue, it is not reasonable to infer from it that Bravenec was unaware of an entirely different evidentia-ry issue, especially in light of Bravenec’s later testimony at the § 2255 evidentiary hearing, which indicates that he was in fact cognizant of the possibility of filing a motion to suppress McGrew’s statements.

2. Sound trial strategy

McGrew’s second argument is that Bra-venec’s failure to move to suppress any testimony about McGrew’s statements constituted ineffective assistance, as Bravenec knew or should have known that Gallegos would testify that McGrew said that he knew about the rifle. McGrew bases this argument on Gallegos’s police report, which was turned over to Bravenec during discovery. McGrew contends that this report unequivocally established that Gallegos would testify to the effect that McGrew had told him that he knew about the rifle under the bed.
The relevant portion of Gallegos’s report reads:
[I] took all the evidence into the living room and as [McGrew] saw what I had he stated that the marijuana was his. As for the weapon, he stated that a male he slightly knew [Tutt] had brought over a small safe and the weapon inside a blue sleeve. He stated that he had given permission to [Tutt] to place the property under the bed. [McGrew] stated that he had not asked [Tutt] what he had but gave his permission to bring it over and leave it at his residence.
At the § 2255 evidentiary hearing, Bra-venec was confronted with Gallegos’s report and explained his decision not to file a motion to suppress at some length. Bra- *347 venec testified that he was unwilling to put McGrew on the stand because of his criminal history and pending state criminal charges against him. His theory of the case was that McGrew had known that Tutt had placed items under the bed, but that McGrew had not known what those items were. Bravenec wanted to make this argument to the jury and believed that the officers, including Gallegos, would make it for him if they were allowed to testify about what McGrew had told them.
Specifically, at the evidentiary hearing Bravenec testified that:
Mr. McGrew told me ... that he had told the police that ... [Tutt] had come over and put something underneath his bed.... [A]nd our whole story [was] that Mr. McGrew didn’t know what ... was placed underneath his bed[,] that he didn’t know it was a rifle. And because of Mr. McGrew’s background, I thought it was impossible to put him on the witness stand.
Mr. McGrew told me and [one of the other police reports] indicated that [the officers] would say that Mr. McGrew said that [Tutt] put “something” under his bed or some things under his bed. Nowhere did I see the statement that Mr. McGrew said, oh, yes, he put that gun underneath my bed.
As a result, Bravenec testified that his expectation that the officers’ testimony about McGrew’s statements would be favorable in the context of his defense theory, so he made no motion to suppress.
Bravenec’s view of what the officers, including Gallegos, were likely to say is not squarely contradicted by Gallegos’s report. The report says that McGrew told Gallegos that Tutt “had brought over a small safe and the weapon inside a blue sleeve,” but this reference to “the weapon” does not necessarily indicate prior knowledge of the rifle as, at the point that McGrew was speaking to Gallegos, the rifle had already been discovered by the officers and was visible to McGrew as he spoke. The ambiguous reference to “the property” in the next sentence of the report, coupled with McGrew’s insistence that he had not asked Tutt what he would be bringing over, also cast doubt on whether McGrew knew there was a weapon underneath his bed before the rifle was produced by the officers.
Furthermore, while Gallegos did testify on direct examination at trial that McGrew had admitted that “[h]e knew it was there ... but ... said it wasn’t his,” on cross-examination Bravenec was able to get Gallegos to make admissions about McGrew’s statements that favored the defense. Gallegos admitted that McGrew had actually said words to the effect of “oh, that must have been what Mr. Tutt brought over but I didn’t know what that was.” Gallegos also clarified definitively on cross-examination that the officers had not questioned McGrew about the rifle before showing it to him and conceded that “[o]nly after he had seen the gun did he say, oh, that must be Mr. Tutt’s.”
Bravenec’s strategy of relying on the officers to testify in support of his theory of the case may have been risky, but our review of an attorney’s performance under Strickland is “highly deferential.” Strickland, 466 U.S. at 689, 104 S.Ct. 2052. “Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices.” Yohey v. Collins, 985 F.2d 222, 228 (5th Cir.1993). Bravenec faced a very difficult challenge in convincing a jury that his client did not know about a sizable weapon found underneath the bed he admitted to having slept in the night before. Compounding this quandary was a co-defen *348 dant who, in his own testimony and through other witnesses, aggressively sought to inculpate McGrew. Based on Bravenec’s explanation at the § 2255 hearing, his decision to allow testimony about McGrew’s statements to the officers in the not-unreasoned — and not entirely unrealized — hope that it would end up helping McGrew’s case was not “so ill chosen that it permeate[d] the entire trial with obvious unfairness.” Dretke, 404 F.3d at 885 (quoting Jones, 287 F.3d at 331). As a result, the decision not to file a motion to suppress did not constitute ineffective assistance under Strickland, and it cannot amount to cause to excuse McGrew’s procedural default of his Fifth Amendment claim.
CONCLUSION
For the foregoing reasons, we AFFIRM the judgment of the district court.

 Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set' forth in 5th Cir. R. 47.5.4.