**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**November 15, 2006**

**Charles R. Fulbruge III**
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 05-70033

_____

LIONELL RODRIGUEZ,

                    Petitioner - Appellant,

v.

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

                    Respondent - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
No. 4:03-CV-317

_____

Before SMITH, GARZA, AND PRADO, Circuit Judges.

PER CURIAM:[*]

    Treating the Petition for Rehearing En Banc as a Petition

for Panel Rehearing, the Petition for Panel Rehearing is DENIED

in part and GRANTED in part as reflected in the substitute

opinion filed today. No member of the panel nor judge in regular

active service of the court having requested that the court be

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

1

polled on Rehearing En Banc (FED. R. APP. P. and 5TH CIR. R. 35), the Petition for Rehearing En Banc is DENIED. We withdraw our previous opinion and substitute the following.

Lionel Gonzales Rodriguez was convicted in Texas state court for the murder of Tracy Gee. He now seeks habeas corpus relief from his sentence of death. After denying habeas relief on all claims, the district court granted Rodriguez a certificate of appealability ("COA") on one issue: whether Rodriguez's death sentence violated his constitutional rights because he received ineffective assistance of counsel ("IAC") in the punishment phase of his trial. We find that Rodriguez's claim is meritless and AFFIRM the denial of habeas relief. We DENY Rodriguez's request for a COA on all other issues.

## I.

These are the facts as recounted by the district court:

Rodriguez confessed to the murder for which he was convicted. According to Rodriguez's confession, he became physically abusive in an altercation with his mother and sister on the night of the murder. He then stole a shotgun and an automatic rifle from his stepfather and drove around with his cousin, Jaime Gonzalez, looking for a place to rob. Rodriguez unsuccessfully attempted to rob a gas station. While driving around, Rodriguez became angry at another driver and repeatedly fired shots at him. This occurred in a residential neighborhood.

2

The other driver drove safely away and, at a distance, turned his car around to write down Rodriguez's license plate number. Rodriguez jumped out of his car and fired another shot at the other driver.

Rodriguez and Gonzalez continued driving. While stopped at a stop light, Rodriguez noticed a young woman, Tracy Gee, sitting alone in her car. He decided to rob her and steal the car. He confessed to shooting at her one time with the rifle. The shot pierced the passenger side window and Gee's head fell forward. Her car started rolling, and Rodriguez jumped out of his car and ran over to the other car. He managed to get into the car and pushed Gee out the driver side door onto the street. He then drove off in the stolen car.

Gonzalez drove away from the scene, and a police officer, Theron Runnels, pulled him over. Gonzalez exited the car and, after initially approaching the officer, began to run. After a chase, a second officer, Randy West, arrested Gonzalez for evading arrest. In the meantime, Runnels found a rifle and shotgun in the car. When West brought Gonzalez to Runnels so that the latter could identify him, Gonzalez shouted that he did not kill Gee but that his cousin did.

Rodriguez was arrested in the victim's car while fleeing the scene of the crime. His pants were stained with blood, and there was blood, bone, and brain matter inside the car. Rodriguez had

brown matter in his hair.  Police also recovered a fired bullet from the victim's car and found gunpowder residue in Gonzalez's car.  The gunpowder residue showed that a gun was fired from inside that car.

An autopsy revealed a massive entrance gunshot wound to Gee's right temple that had very large lacerations radiating around it, and an exit wound with extensive lacerations on the left forehead.  Gee's skull had massive fractures.  Some of her brain extruded through the wounds.  Gee lost some bone fragments from her skull when she was shot.  The cause of death was the gunshot wound.

During Rodriguez's sentencing, the State presented evidence that Rodriguez shot at the other driver.  Officers Runnels and West testified that, when West brought Gonzalez to the scene of the crime where Runnels was performing inventory on Gonzalez's car, Gonzalez stated that his cousin, Rodriguez, killed Gee.

The State produced evidence that Rodriguez burglarized an elementary school in January 1990.  Rodriguez received probation for the burglary, but his probation was later revoked.  His probation officer testified that Rodriguez was physically abused by an alcoholic father during childhood.  The probation officer characterized Rodriguez as having average to somewhat above average intelligence and having the potential to do something with his life.

4

The State introduced records from the Harris County Jail naming Rodriguez as an "escape threat" and as "aggressive towards staff," instructing jail staff to use handcuffs and leg irons when moving Rodriguez from his cell. A Harris County Sheriff's Deputy testified that, during Rodriguez's incarceration at the Harris County Jail on the capital murder charge, there was a standing order that Rodriguez was to wear leg irons and handcuffs when he was out of his cell. Rodriguez became belligerent to a jail deputy while being brought to a visit with his mother. Upon returning to his cell, Rodriguez broke a window. There was also evidence that while at Harris County Jail, Rodriguez was frequently disruptive, and jail staff tried to perform a daily search of his cell for shanks or weapons. During one of these searches, deputies found a homemade shank.

Veronica Vinton and her father testified that, after Veronica refused Rodriguez's request for a date, Rodriguez stalked her. Another witness testified that Rodriguez assaulted him and damaged his car with a baseball bat. Other witnesses testified that Rodriguez had a bad reputation for not abiding by the law.

Gee's sister Susan offered victim impact testimony. She testified that her mother's health was affected by Tracy Gee's death. She also described Tracy as a person of integrity, and one who loved children.

Rodriguez's sister, Veronica Lopez, testified on Rodriguez's behalf. She testified that he became very angry and rude when he was on crack. She never saw Rodriguez get violent with anyone. She testified that Rodriguez changed dramatically in the time between the murder and his trial. He had adapted to being in prison and started a program creating pamphlets that he and other inmates would send to juvenile homes and churches so that young people could read about how the inmates wound up on death row and could avoid the same fate.

Rodriguez's uncle testified that he is a recovering alcoholic who became sober at age 23, the same age as Rodriguez at the time of his trial. He testified that he saw changes in Rodriguez, specifically in Rodriguez's desire to help others. Rodriguez's aunt testified that Rodriguez's father, Henry, abused drugs and alcohol and was extremely violent toward his wife and children. She also testified that Rodriguez changed and that he had a religious conversion while incarcerated. Rodriguez's great aunt corroborated that he experienced a religious conversion and that he was working to discourage kids from pursuing a path of crime.

Janie Warstler, Rodriguez's mother, testified that Henry was very abusive and an alcoholic. She also suspected that he was using drugs. Henry started taking Rodriguez to bars and giving him beer to drink when Rodriguez was six or seven years old.

Rodriguez started using drugs in his early teens.

Henry threatened to kill Ms. Warstler on more than one occasion. He choked her and pushed her against a wall, threatened her with a knife, and tried to run her over. On one occasion, he used a shotgun to shoot down the door of Ms. Warstler's mother's house. He was also physically abusive to Rodriguez and his siblings, and once threatened Rodriguez's sister with a gun. He also abused the family pets and other animals.

When Rodriguez was fourteen, Janie left Henry, but Rodriguez insisted on staying with his father. Some time later, Rodriguez called his mother and told her that Henry was drunk all the time, was not buying groceries, and was not giving Rodriguez any lunch money. When Janie said she would come and get him, Rodriguez told her not to because he was afraid Henry would be there and would be violent. Janie sent her brothers to pick up Rodriguez.

Henry also testified and agreed with Janie's testimony. He also observed that Rodriguez has changed for the better during the time he has been in prison. Several other witnesses testified that Rodriguez has changed while in prison, experienced religious conversion, had no significant disciplinary problems, and was a positive influence on others.

The jury found that: (1) Rodriguez deliberately caused Tracy Gee's death and with the reasonable expectation that her death

7

would occur; (2) there is a reasonable probability that Rodriguez would commit criminal acts of violence that would constitute a continuing threat to society; and (3) there were not sufficient mitigating circumstances to warrant imposition of a sentence of life imprisonment rather than death. Accordingly, the Harris County jury convicted Rodriguez of capital murder and sentenced him to death on September 20, 1994.

## II.

On direct appeal, the Court of Criminal Appeals affirmed Rodriguez's conviction and sentence. Rodriguez v. State, No. 71,974 (Tex. Crim. App. Feb. 5, 1997). Rodriguez did not seek certiorari review in the Supreme Court of the United States. Instead, he timely filed a state habeas application on March 27, 1998. Rodriguez's application was denied by the Texas Court of Criminal Appeals based on the trial court's findings of fact and conclusions of law. Ex parte Rodriguez, No. 50,773-01 (Tex. Crim. App. Oct. 23, 2002).

On July 3, 2003, Rodriguez timely filed an amended federal writ of habeas corpus.[1] Rodriguez v. Dretke, No. H-03-317 (S.D. Tex. 2005). On March 29, 2005, the district court ordered that all habeas relief be denied, and granted a COA on one claim. Rodriguez filed notice of appeal on May 19, 2005. Rodriguez

---

[1] Rodriguez filed a skeletal petition at first, and then, with leave of court, filed an amended application.

appeals the denial of a COA on six claims and presents one claim on the merits.

## III.

Because Rodriguez's habeas petition was filed in the district court after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, AEDPA governs his petition. See Lindh v. Murphy, 521 U.S. 320, 336 (1997). We will consider Rodriguez's COA request first, followed by the issue for which the district court granted COA.

### A.

Under AEDPA, Rodriguez must obtain a COA from either the district court or appellate court before he can appeal the denial of habeas relief. See 28 U.S.C. § 2253(c)(1); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To obtain a COA, Rodriguez must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). That is, if Rodriguez can show that the district court's application of AEDPA to his constitutional claims was debatable among reasonable jurists, we will issue a COA. Miller-El, 537 U.S. at 336.

In deciding whether to grant a COA, we are limited "to a threshold inquiry into the underlying merit of [the petitioner's] claims." Miller-El, 537 U.S. at 327 (citing Slack v. McDaniel, 529 U.S. 473, 481 (2000)). Our analysis "requires an overview of the claims in the habeas petition and a general assessment of

9

[their] merits" rather than a "full consideration of the factual or legal bases adduced in support of the claims." Id. at 336. "Because the present case involves the death penalty, any doubts as to whether a COA should issue must be resolved in [the petitioner's] favor." Hernandez v. Johnson, 213 F.3d 243, 248 (5th Cir. 2000).

In deciding whether to grant a COA, we recognize that AEDPA imposes a deferential standard of review on a federal habeas court with respect to claims adjudicated on the merits in state court. A federal court cannot grant habeas relief unless the state court adjudication of that claim either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or


(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.


28 U.S.C. § 2254(d); see Wiggins v. Smith, 539 U.S. 510, 520 (2003). A decision is contrary to clearly established federal law if it "reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different

10

conclusion than the Supreme Court based on materially indistinguishable facts." Miniel v. Cockrell, 339 F.3d 331, 337 (5th Cir. 2003), cert. denied, 540 U.S. 1179 (2004). We presume the facts to be correct unless Rodriguez meets his burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Rodriguez argues that reasonable jurists would find it debatable that: (1) the admission of Gonzalez's statement and Rodriguez's jail disciplinary records did not violate Rodriguez's Sixth Amendment right, (2) the challenge for cause of potential juror Anita Rodriguez did not violate Rodriguez's right to due process, and (3) the ineffective assistance of counsel he received with respect to each of the aforementioned alleged errors did not violate his Sixth Amendment right. Each claim will be addressed in turn.

1.   Admission of Accomplice Statements and Jail Disciplinary Records

Rodriguez claims a COA should issue because reasonable jurists could debate whether his Sixth Amendment right was violated by the district court's admission of Gonzalez's statement implicating Rodriguez as Gee's murderer as an "excited utterance." He also argues the admission of his jail disciplinary records and Gonzalez's statement violated the Sixth

11

Amendment under <u>Crawford v. Washington</u>, 541 U.S. 36 (2004).

a.

Rule 803(2) of the Texas Rules of Criminal Evidence[2] states that an "excited utterance" is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tex. R. Evid. 803(2). The "critical factor" for determining whether a statement is an excited utterance is "'whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event.'" <u>Apolinar v. State</u>, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005) (citing <u>Zuliani v. State</u>, 97 S.W.3d 589, 596 (Tex. Crim. App. 2003)).

Reasonable jurists would not debate the district court's determination that Gonzalez's statement was an excited utterance, and that its admission did not violate the Sixth Amendment. In the district court, Rodriguez argued the facts are insufficient to show that Gonzalez's statement was spontaneous and unreflective, because of the period of time that had elapsed between Gonzalez's flight and his return to his vehicle. The district court concluded that Rodriguez's argument fails because an "excited utterance" is not defined by the period of time elapsed between the startling event and the statement made about

_____

[2] After Rodriguez's trial, the Texas Rules of Criminal Evidence changed its title to the Texas Rules of Evidence.

12

it.  See Zuliani, 97 S.W.3d at 596 ("[I]t is not dispositive that the statement is an answer to a question or that it was separated by a period of time from the startling event; these are simply factors to consider in determining whether the statement is admissible under the excited hearsay exception.").  The district court noted that: (1) Gonzalez blurted out his remarks concerning Tracy Gee's murder after fleeing a routine traffic stop, being chased by police officers, and being apprehended while weapons from within his vehicle were being inventoried by police, and (2) Gonzalez actually observed the events he described and his intervening actions, including hiding in a swimming pool and in someone's vehicle, and demeanor were known to the two officers. Rodriguez fails to make a substantial showing that he was denied his constitutional right.

b.

Rodriguez also argues that reasonable jurists could debate the district court's determination that the introduction of both Gonzalez's statement and the jail disciplinary records do not violate Crawford,[3] 541 U.S. 36 (2004).  See also U.S. CONST. amends. VI, XIV.  Rodriguez's arguments are barred by the non-retroactivity doctrine of Teague v. Lane.  Lave v. Dretke, 444

---

[3]  Crawford v. Washington held that out-of-court testimonial statements are per se inadmissible against a criminal defendant unless the defendant has had a prior opportunity to cross examine the declarant.  541 U.S. 36, 68 (2004).

F.3d 333, 337 (5th Cir. 2006) (holding that the rule in <u>Crawford</u> is not to be applied retroactively); <u>see also</u> <u>Teague v. Lane</u>, 489 U.S. 288, 301 (1989) (holding that, except in very limited circumstances, a federal habeas court cannot retroactively apply a new rule of criminal procedure).

Reasonable jurists would not debate the district court's determination that the state court admitted both Gonzalez's statement and the jail disciplinary records under prevailing law at the time that Rodriguez's conviction became final. The district court found that the officers' testimonies recounting Gonzalez's statement satisfied the Confrontation Clause because they qualified under a firmly-rooted hearsay exception. <u>See</u> <u>White v. Illinois</u>, 502 U.S. 346, 355 n.8, 356 (1992). Rodriguez has not shown that a COA should be granted on this issue. <u>See</u> <u>Teague</u>, 489 U.S. at 301. As to the jail disciplinary records, the district court determined that the trial court admitted the jail disciplinary records, over objection, under the business records exception to the general rule barring hearsay. The business records exception was applicable at the time of Rodriguez's trial and direct appeal. TEX. R. CRIM. EVID. 803(6). Rodriguez fails to make a substantial showing that his constitutional right was denied by the admission of either of these pieces of evidence.

2. <u>Challenge to Prospective Juror Anita Rodriguez</u>

14

Rodriguez claims a COA should issue because reasonable jurists could debate whether the State did not violate his right to due process by misinforming the trial court regarding the eligibility of a challenged juror, Anita Rodriguez.

Prior to voir dire, the prosecution advised the trial court that it believed Ms. Rodriguez was subject to a challenge for cause under Texas Code of Criminal Procedure article 35.16(a)(2), which provides that a juror is disqualified from serving if she has been convicted of any grade of theft or of a felony. TEX. CODE. CRIM. PROC. art. 35.16(a)(2). Defense counsel objected to the challenge on the grounds that a successfully completed probation was not a conviction for purposes of disqualifying a prospective juror.[4] Ms. Rodriguez admitted to the trial court that she had been convicted of misdemeanor theft in 1984 and placed on probation, and she said that her probation was terminated. The trial court granted the challenge for cause. Neither the trial court nor defense counsel requested copies of Ms. Rodriguez's probation records.

Records from the Harris County Clerk's Office reflect that Ms. Rodriguez was successfully discharged from her probation, and the charge against her was dismissed. In the district court,

---

[4] Trial counsel was unsure and inquired upon objecting whether a successfully completed probationary period was a conviction for the purpose of determining eligibility for jury service. The trial court obtained advice from the court clerk that it was a conviction.

15

Rodriguez argued that Ms. Rodriguez was not subject to challenge for cause because she received and successfully completed probation; he believes the prosecution lied to the trial court about Ms. Rodriguez's eligibility to serve. Rodriguez further argued that the prosecution deliberately confused the trial court by employing the term "terminating" rather than "revoking" in describing the manner in which Ms. Rodriguez's probation ended. The district court found the fact that Ms. Rodriguez's probation had "terminated" was an accurate reflection, and the trial court deemed it enough to rule on the challenge. Reasonable jurists would not debate the district court's determination that Rodriguez failed to make a substantial showing that prosecutorial misconduct violated his right to due process.

### 3. Ineffective Assistance of Counsel

We turn to Rodriguez's IAC claims regarding the admission of Gonzalez's statement and the jail disciplinary records and the challenge to potential juror, Ms. Rodriguez. Rodriguez alleges that reasonable jurists could debate the district court's decision in denying his IAC claims based on (1) his appellate counsel's failure to appeal the admission of Gonzalez's statement through the testimonies of Officers Runnels and West, (2) his appellate counsel's failure to appeal the introduction of the jail disciplinary records in the Texas Court of Criminal Appeals, and (3) his trial counsel's failure to timely supplement the

16

record with evidence demonstrating the trial court's erroneous conclusion in dismissing Ms. Rodriguez as a juror, and to advise appellate counsel of this possible ground for error.[5]

Strickland v. Washington governs IAC claims. 466 U.S. 668 (1984). In order to prevail, Rodriguez must meet both the deficiency and prejudice prongs of the Strickland test. Id. at 687. Rodriguez must tie the deficiency and prejudice prongs to specific acts or omissions of his counsel that are not the result of professional judgment. Id. at 690. If Rodriguez fails to prove either prong, his claim fails.

First, to prove deficiency, Rodriguez must prove that in light of all the circumstances as they appeared at the time of the conduct, his counsel's representation fell below an objective standard of reasonableness. Id. at 687. Rodriguez's burden is heavy. Id. at 689 (stating that the court presumes the alleged deficiencies "fall[] within the wide range of reasonable professional assistance"). See also Jones v. Barnes, 463 U.S. 745, 749 (1983) ("It is not required that an attorney argue every conceivable issue on appeal, especially when some may be without

---

[5] Rodriguez alternatively argued in the district court that he obtained IAC from his appellate counsel too, "if" appellate counsel had knowledge of the county clerk's office records. The record shows that Rodriguez's appellate counsel attempted to supplement the appellate record before the Texas Court of Criminal Appeals with Ms. Rodriguez's misdemeanor probation records, which was denied. The district court concluded that Rodriguez failed to identify how his appellate counsel performed deficiently.

merit. Indeed, it is his professional duty to choose among potential issues, according to his judgment as to their merit and his tactical approach."(internal citations omitted)). Second, to prove prejudice, Rodriguez "must show that there is a reasonable probability that, but for [his] counsel's unprofessional errors, the result of [his] proceeding would have been different." Id. at 694.

A COA will not issue on any of Rodriguez's IAC claims because reasonable jurists would not debate the district court's determination on each issue. Rodriguez's counsel objected to the admission of Gonzalez's statement, and he was overruled. Rodriguez contended in the district court that his appellate counsel was ineffective by failing to raise this ground on direct appeal. Rodriguez's state appellate counsel filed a brief containing thirty points of error, but did not raise as a claim for relief the trial court's admission of Gonzalez's accusations against Rodriguez. The district court found that there was no error in admitting Gonzalez's statement, and, therefore, Rodriguez's appellate counsel was not deficient for failing to raise the issue. Further, the district court concluded Rodriguez cannot show prejudice because it is not reasonably likely that he would have received any relief had the claim been presented.

Rodriguez argued in the district court that the reliability of the jail disciplinary records was subject to challenge at the

18

time of appeal.  The district court found that Rodriguez cannot show that his appellate counsel was deficient in failing to object to the admission of these records because the trial court properly admitted the records according to the law existing at the time of Rodriguez's trial and direct appeal.

Finally, reasonable jurists would agree that Rodriguez cannot show deficiency or prejudice on the issue of whether his trial counsel was ineffective for failing to obtain Ms. Rodriguez's records in time to present them to the trial court and for failing to advise appellate counsel of this possible ground for error.  See Jones, 463 U.S. at 751-52.

### B.

For the issue certified by the district court, we engage in a determination of its merits under AEDPA.  Rodriguez claims that his death sentence violates the Sixth and Fourteenth Amendments because he received IAC during his sentencing proceedings.  As discussed, a petition for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the prior adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Again, a decision is contrary to clearly established federal law if it "reaches a legal conclusion in

19

direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts." Miniel v. Cockrell, 339 F.3d 331, 337 (5th Cir. 2003), cert. denied, 540 U.S. 1179 (2004). As also discussed, in ruling on the merits, we defer to the state court's factual findings unless they "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). Our inquiry into reasonableness is objective, not subjective, and we will not issue the writ as a result of our independent judgment that the state habeas court "applied clearly established federal law erroneously or incorrectly." Williams v. Taylor, 529 U.S. 362, 409-11 (2000). We presume correct the factual findings of the state unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Rodriguez contends that trial counsel neither investigated nor presented evidence in relation to the etiological origins of his brain damage and the link between the damage to his brain's frontal lobes and his impulsive nature. Rodriguez's evidence consists of written statements found in the institutional records of the Orchard Creek Hospital, a psychiatric facility where Rodriguez was treated prior to his trial for Gee's murder, that

20

were known to his counsel but were not presented at his trial. In addition, Rodriguez complains that his jury did not hear a neuro-psychologist's opinion that his abusive upbringing, lengthy drug addiction, and use of cocaine damaged his brain's frontal lobes. He argues that this unproferred evidence could have persuaded one juror to vote against the death penalty.

Rodriguez admitted that his counsel at his state habeas proceeding did not provide this claim to the state court. Pursuant to 28 U.S.C. § 2254(b)(1), Rodriguez should have fully exhausted remedies available to him in state court before proceeding to federal court; he should have presented the substance of his claim in the state court. Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir. 1997). "A habeas petitioner fails to exhaust state remedies 'when he presents material additional evidentiary support to the federal court that was not presented to the state court.'" Kunkle v. Dretke, 352 F.3d 980, 988 (5th Cir. 2003), cert. denied, 543 U.S. 835 (2004) (quoting Graham v. Johnson, 94 F.3d 958, 968 (5th Cir. 1996)). See also Moore v. Quarterman, 454 F.3d 484, 491 (5th Cir. 2006) ("Evidence is not material for exhaustion purposes if it supplements, but does not fundamentally alter, the claim presented to the state courts.") (internal quotations and citation omitted) (emphasis in original).

In assessing the exhaustion of Rodriguez's IAC claim as it

pertains to his counsel's failure to investigate Rodriguez's brain damage, we look to Rodriguez's diligence at the state habeas level: "[A] failure to develop the factual basis of a claim is not established unless there is a lack of diligence . . . . Diligence . . . depends upon whether [petitioner] made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court . . . ." Williams, 529 U.S. at 430-32, 435.

Rodriguez claims that he could not present these pieces of evidence in the state habeas proceedings because he was not provided enough resources to conduct his investigation.  However, the record shows that the Texas Court of Criminal Appeals granted Rodriguez $4000 for investigative services in connection with his state habeas proceeding.[6]  As noted by the district court, Rodriguez does not explain why he did not obtain at least some neurological or psychological tests with the funds granted him. It is unclear whether Rodriguez exercised sufficient diligence at the state habeas level.

However, even if Rodriguez had exhausted his state remedies, his claim for IAC fails.  See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust

_____

[6]  In total, Rodriguez requested more than $11,000 for investigative services, almost half of which was requested just days before his petition for writ of habeas corpus was due.

22

the remedies available in the courts of the State.")  Again,
Strickland governs Rodriguez's IAC claim.  466 U.S. 668 (1984).
In order to prevail, Rodriguez must meet both the deficiency and
prejudice prongs of the Strickland test.  Id. at 687.  As
discussed, to prevail on the deficiency prong, Rodriguez must
demonstrate that counsel's representation fell below an objective
standard of reasonableness.  Id.  In order to prove prejudice,
Rodriguez must show a reasonable probability that but for his
counsel's deficient performance, the "additional mitigating
evidence [was] so compelling that there is a reasonable
probability that at least one juror could reasonably have
determined that, because of [the defendant's] reduced moral
culpability, death was not an appropriate sentence."  Neal v.
Puckett, 286 F.3d 230, 241 (5th Cir. 2002) (en banc), cert.
denied, 537 U.S. 1104 (2003); see also Strickland, 466 U.S. at
695 ("[T]he question is whether there is a reasonable probability
that, absent the errors, the sentencer--including an appellate
court, to the extent it independently reweighs the evidence--
would have concluded that the balance of aggravating and
mitigating circumstances did not warrant death.").

"[C]ounsel has a duty to make reasonable investigations or
to make a reasonable decision that makes particular
investigations unnecessary."  Strickland, 466 U.S. at 691
(emphasis added).  "[A] particular decision not to investigate

must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. "In assessing counsel's investigation, we must conduct an objective review of their performance, measured for reasonableness under prevailing professional norms, which includes a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." Wiggins v. Smith, 539 U.S. 510, 523 (2003) (internal quotation marks and citations omitted); see Rompilla v. Beard, 545 U.S. 374, 381 (2005) (noting that "hindsight is discounted by pegging adequacy to 'counsel's perspective at the time' investigative decisions are made") (quoting Strickland, 466 U.S. at 689).

The evidence does not support Rodriguez's contention that his trial counsel performed deficiently by not presenting evidence of his brain damage. Trial counsel pursued a mitigation case that described Rodriguez as a changed person. The jury heard abundant evidence lessening Rodriguez's moral culpability and humanizing him. They heard from witnesses who described Rodriguez as having reformed his conduct through religious studies following his incarceration in 1991 and that he had a good disciplinary record while incarcerated. It is a reasonable conclusion, and within trial counsel's purview of professional judgment, that evidence of brain damage to explain Rodriguez's violent behavior would counteract counsel's mitigation strategy.

24

Evidence of Rodriguez's permanent brain damage presents the proverbial double-edged sword: it could bolster the State's case on future dangerousness without significantly reducing, if at all, Rodriguez's moral blameworthiness.  See Martinez v. Dretke, 404 F.3d 878, 889 (5th Cir.), cert. denied, 126 S. Ct. 550 (2005) ("As we have held, evidence of organic brain injury presents a 'double-edged' sword, and deference is accorded to counsel's informed decision to avert harm that may befall the defendant by not submitting evidence of this nature.").  Thus, trial counsel's decision not to introduce evidence of brain damage, given the availability of other, less damaging, mitigating evidence, falls within the bounds of sound trial strategy.  See id. at 890.

Rodriguez insists that trial counsel's strategic decision not to introduce evidence of brain damage was unreasonable because trial counsel failed to investigate brain damage.  In support of this failure to investigate claim, Rodriguez points to the institutional records of the Orchard Creek Hospital and a neuro-psychologist's opinion that his abusive upbringing, lengthy drug abuse, and use of cocaine damaged his frontal lobes.[7]  The state habeas court found: that trial counsel was aware of the

---

[7]  Even though it is questionable whether Rodriguez exercised sufficient diligence at the state habeas level to exhaust his failure to investigate claim, we may still deny his writ of habeas corpus on the merits.  See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

25

institutional records at Orchard Creek Hospital but decided not to introduce them; that trial counsel objected to the State's attempt to admit the Orchard Creek Hospital records, "in part, because trial counsel did not want the jury informed of a diagnosis of sociopathy for [Rodriguez], and that trial counsel instead offered extensive evidence of [Rodriguez's] character change and his good deeds in prison to persuade the jury that [Rodriguez] would not be a future danger"; and that the institutional records were used by the State for the limited purpose of cross-examining Rodriguez's mother and that the records did not present the jury with a diagnosis of sociopathic behavior. The state habeas court further found that "trial counsel presented extensive testimony . . . of [Rodriguez's] home life, his father's abuse, and its affect on [Rodriguez]," and that trial counsel presented evidence of Rodriguez's drug problem, including Rodriguez's anger when he used crack cocaine. Rodriguez has not rebutted the presumption of correctness of the state court's factual findings, and we defer to these findings in ruling on the merits. See 28 U.S.C. § 2254(e)(1).

Most of the evidence that Rodriguez claims resulted in an unreasonable investigation by trial counsel was actually presented by trial counsel and heard by the jury. As found by the state court, the jury heard evidence of Rodriguez's home life, his father's abuse, his drug abuse, and the fact that he

26

got angry when he used crack cocaine.  The jury did not hear evidence of Rodriguez's institutional records at Orchard Creek Hospital.  The decision not to introduce those records and to forego further investigation into those records probably was not unreasonable in light of other potentially conflicting mitigating evidence, what trial counsel knew at the time of Rodriguez's 1994 trial, what the State introduced into evidence, and the "heavy measure of deference" owed to counsel's investigative judgments. See Strickland, 466 U.S. at 691; see also Wiggins, 539 U.S. at 523.  The only remaining evidence that Rodriguez proffers––the opinion of the neuro-psychologist in post-conviction proceedings ––is irrelevant to determining the reasonableness of trial counsel's perspective (and thus investigation) in Rodriguez's 1994 trial.  See Martinez, 404 F.3d at 886 (stating that testimony of experts and family members not involved in the defendant's 1989 trial proceedings is "irrelevant to counsel's perspective in 1989"); see also Rompilla, 545 U.S. at 381.

Even if counsel's strategies in failing to further investigate or present evidence of brain damage could be described as deficient, they cannot form the basis of a constitutional ineffectiveness assistance of counsel claim because Rodriguez cannot affirmatively demonstrate prejudice. See Strickland, 466 U.S. at 695.  In other words, there is no evidence that trial counsel's strategies, even if they fell below

professional norms, prejudiced Rodriguez or "'permeated [his] entire trial with obvious unfairness.'" Martinez, 404 F.3d at 890 (quoting United States v. Jones, 287 F.3d 325, 331 (5th Cir.), cert. denied, 537 U.S. 1018 (2002)). "In assessing prejudice, we 'must consider the totality of the evidence before the judge or jury.'" Id. (quoting Strickland, 466 U.S. at 695).

In addition to the mitigation evidence presented by the defense, the jury had before it evidence of Rodriguez's execution of the crime of conviction. The jury heard evidence that on the night of the murder, Rodriguez stole a shotgun and an automatic rifle from his stepfather and was driving around looking for a place to rob. The jury heard that Rodriguez unsuccessfully attempted to rob a gas station, and that he repeatedly fired shots at another driver in a residential neighborhood before shooting Gee and stealing her car. The State produced evidence that Rodriguez burglarized an elementary school in 1990. The State also produced evidence of Rodriguez's Harris County Jail records depicting Rodriguez as an "escape threat" and "aggressive towards staff." The jury found there was not sufficient mitigating evidence to warrant imposition of a life sentence in lieu of the death sentence. It is not reasonably probable that this outcome would change if, assuming arguendo, his counsel had not erred in investigating or presenting this additional evidence. See Strickland, 466 U.S. at 695 ("[T]he question is

28

whether there is a reasonable probability that, absent the errors, the sentencer--including an appellate court, to the extent it independently reweighs the evidence--would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."). The nature of the evidence against Rodriguez advises against a prejudice finding. Cf. Martinez, 404 F.3d at 890.

## IV.

For the foregoing reasons, we DENY Rodriguez's request for a COA on all issues, and we AFFIRM the denial of habeas relief on Rodriguez's ineffective assistance of counsel claim for failure to investigate and present evidence of brain damage pertaining to the penalty phase of Rodriguez's trial.

COA DENIED; Habeas Relief DENIED; Judgement of the district court is AFFIRMED.